NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0073n.06
Filed: January 29, 2009

No. 07-6102

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| CHARLES HUMES, | ) | |
| | ) | |
| Defendant-Appellant, | ) | OPINION |
| | ) | |
| _____ | ) | |

**Before: SUHRHEINRICH, GILMAN, and WHITE, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Charles Humes was convicted by a jury of being a felon in possession of a firearm. At trial, the prosecution put on three witnesses who established Humes's possession of a Smith & Wesson .38 special caliber revolver (the revolver). The district court, after concluding that this offense, together with Humes's prior criminal history, caused him to be classified as an armed career criminal within the meaning of the Armed Career Criminal Act (ACCA), sentenced Humes to 235 months of imprisonment and three years of supervised release. Humes argues on appeal that (1) there was insufficient evidence to convict him, and (2) the district court erred in determining that he met the ACCA classification. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

# I. BACKGROUND

## A. The firearms offense

In May 2006, a one-count indictment was filed in the United States District Court for the Western District of Tennessee, charging Humes with being a convicted felon who knowingly possessed a Smith & Wesson .38 special caliber revolver, in violation of 18 U.S.C. § 922(g). The government put on multiple witnesses at trial, three of whom were called to prove that Humes was in actual or constructive possession of the revolver: Officer Veronica Crutchfield, store owner Robert Harrison, Jr., and Officer Brian Jones.

At approximately 8:30 p.m. on November 30, 2005, Officer Crutchfield was working undercover for the Organized Crime Unit. She was sitting in an unmarked police car when Humes walked up to the car and asked her who she was looking for and what she was doing. Crutchfield told Humes that she was waiting for someone. Humes bent down and looked in her car before turning to leave. As he walked away, Crutchfield observed the black handle of a handgun protruding from his right rear pocket. She then radioed her supervisor that there was an "older dark complected male black wearing dark clothing with a gun in the right rear pocket" in the area. The supervisor advised her to leave the area immediately. At trial, Crutchfield identified the revolver as the one that Humes was carrying that night. She admitted, however, that although she had described the gun in her radio transmission as a "black handgun," the revolver that Humes was charged with possessing was actually silver with a black-rubber handle.

Harrison is the owner of Tong's Grocery, located not far from where the conversation between Crutchfield and Humes took place. He testified that, shortly after 9:00 p.m. on November 30, 2005, he twice saw Humes walking on the street with a gun in his hand. Harrison had known

Humes as a customer for more than fifteen years. Humes had come into his grocery store earlier that night, not long before closing time. Later, after Harrison had locked up, he began driving away but decided to return for a final check. He parked on the street around the corner from the store. As he walked to the corner to take a look, he saw Humes coming around the same corner in the opposite direction. The two men passed each other. When Harrison turned to walk back to the car, he saw Humes walking in front of him, holding a gun in his right hand. Humes was walking up a pathway that cut through hedges on the side of the street and up a hill. After Harrison got back to his car a few minutes later, Humes walked back downhill, came across to Harrison's car, and the two men chatted briefly. Harrison testified that, at this point, Humes was still holding the gun in his right hand. Humes then began walking away across the front of Harrison's car toward the passenger's side.

Moments later, two unmarked police cars pulled around the corner, and officers shouted for everyone to get on the ground. Rather than getting on the ground, Harrison walked in front of his car with his hands up. The police then performed a search of his car and found two guns, a Smith & Wesson .45 automatic under the driver's seat and the revolver that Humes was charged with possessing under the passenger's seat. Harrison admitted on the stand that the Smith & Wesson .45 automatic belonged to him, but denied that the revolver was his. He surmised that Humes must have placed the revolver under the passenger's seat when the officers approached, although he denied seeing Humes do so or hearing any sound of a gun dropping on the floorboard of his car.

Approximately one week after the incident, Humes came into Harrison's grocery store to talk to him. Humes told Harrison that, because of Humes's extensive criminal record, the police were talking about him receiving 20 to 25 years of imprisonment for possessing the revolver. So Humes

-3-

asked Harrison to say that the revolver belonged to Harrison. Humes also promised to pay Harrison's attorney fees and bills in exchange for Harrison's admission. Harrison refused.

Finally, Officer Jones, who was in one of the unmarked police cars that had pulled up to Harrison's car, testified that, as he came upon the scene, he saw Harrison standing by the driver's side of the car and Humes seated in the passenger's seat. Jones testified that Humes "began to make a motion towards the . . . passenger's seat as if . . . concealing something or putting something down." After removing Humes from the car, Jones found the revolver under the passenger's seat. Jones made an in-court identification of the revolver as the gun that he recovered from the car.

**B.    The sentencing hearing**

Humes was found guilty by the jury in May 2007. His sentencing hearing was held three months later. The Presentence Report (PSR) calculated Humes's total offense level to be 33 and his criminal history category to be VI, resulting in a Guidelines range of 235 to 293 months of imprisonment. Moreover, the PSR classified Humes as an armed career criminal, listing nine qualifying convictions in his criminal history. Humes's only objection to the PSR was that his three 1969 convictions should have been counted as one conviction rather than three separate offenses. But he never challenged his classification as an armed career criminal.

At the hearing, the district court confirmed that Humes had received the PSR. The court then reviewed the Guidelines calculations, including Humes's base-offense level and his criminal-history category. It also advised Humes that his offense level was adjusted upward to 33 because he was considered an armed career criminal. Humes once again did not object to this classification. His only objection was the same one that he had raised earlier, i.e., that his three 1969 convictions should

be consolidated. After the court rejected his argument, Humes was sentenced to 235 months of imprisonment with three years of supervised release. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the evidence

#### 1. *Standard of review*

When deciding if a conviction is supported by sufficient evidence, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007) (emphasis in original) (citation and internal quotation marks omitted). This standard applies even if the evidence is circumstantial. *United States v. Kone*, 307 F.3d 430, 434 (6th Cir. 2002).

#### 2. *Analysis*

Three witnesses testified regarding Humes's actual or constructive possession of the revolver. First, Officer Crutchfield testified that she saw a "black handgun" tucked into Humes's back pocket when he walked away from her car on the night of his arrest. Harrison then testified that he twice saw Humes holding a gun near his grocery store on the same night, shortly before the police showed up and took Humes into custody. Furthermore, Harrison testified that Humes came to him a week after the arrest and asked Harrison to claim ownership of the revolver. Finally, Officer Jones testified that when he came on the scene, he saw Humes seated in the passenger's seat of Harrison's car and making a motion as if concealing something underneath the seat. These witnesses all made

in-court identifications of the revolver as the one they saw either on Humes's person or under the passenger's seat of the car.

Based on this testimony, and after viewing all of the evidence in the light most favorable to the government, a rational trier of fact could easily have found that Humes was in possession of the revolver on the evening of November 30, 2005. The jury, by finding Humes guilty, obviously credited the testimony of one or more of the government's witnesses. On appeal, Humes makes much of the fact that there is a factual inconsistency between the testimony of Harrison and that of Officer Jones. Harrison testified at trial that when the police appeared and shouted for everyone to get on the ground, Humes was walking in front of his car. Officer Jones, however, testified that when his car pulled up, he saw Harrison standing by the driver's door and Humes seated in the passenger's seat.

The government contended in closing argument and on appeal that this factual inconsistency is minor and should not affect the determination of whether Humes was in possession of the revolver on the evening in question. We find this argument persuasive. Harrison testified that, when the police cars pulled up and the officers shouted for everyone to get on the ground, Harrison instead walked to the front of his car towards the police with his hands up. In all the commotion, we do not find it surprising that Harrison did not notice if Humes had gotten into Harrison's car—which was behind Harrison at that point—on the passenger's side. Humes had every incentive to try to conceal the revolver in Harrison's car because he knew that, as an ex-felon, he was not allowed to possess a gun. Contrary to what Humes claims, the inconsistency in the witnesses' accounts as to where Humes was when the police came upon the scene does not "call[] into question reality and the laws

of physics." The inconsistency may be explained by perfectly understandable lapses in perception and memory when a witness is distracted by shouting police officers.

**B.      Sentencing under the ACCA**

*1.      Standard of review*

In general, we review de novo a district court's determination that a defendant should be sentenced as an armed career criminal. *United States v. Vanhook*, 510 F.3d 569, 572 (6th Cir. 2007). The government, however, points out that, unlike the situation in *Vanhook*, Humes did not file a written objection to the PSR regarding whether he should be considered an armed career offender, nor did he raise objections to this classification before the sentencing judge. Humes's failure to raise objections on this issue, "even after the district court asked his counsel whether he had any objections," means that he is entitled only to plain-error review. *See United States v. Brock*, 501 F.3d 762, 773 (6th Cir. 2007) (brackets, citations, and internal quotation marks omitted). "The defendant bears the burden of proof on plain error review." *United States v. Polihonki*, 543 F.3d 318, 323 (6th Cir. 2008) (citations and internal quotations marks omitted). In order to prevail, he

> must show that there is (1) error, (2) that is plain, and (3) that affects his substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or reputation of judicial proceedings.

*Id*. (citation and brackets omitted).

*2.      Analysis*

No error, plain or otherwise, occurred in Humes's sentencing. The ACCA provides that "a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one

another, . . . shall be fined under this title and imprisoned not less than fifteen years . . . ." 18 U.S.C. § 924(e)(1). Section 924(e)(2)(B), in turn, defines a "violent felony" as any crime punishable by imprisonment of more than one year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another," or "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

Humes concedes in his brief that his classification as an armed career offender was not necessarily erroneous. His only complaint on appeal is that the district court did not "identify which crimes it determined subjected him to sentencing under the ACCA," or "engage in any sort of analysis of the statutory definitions or of any other evidence which it may consider in determining whether a prior offense is a violent felony under the ACCA." In essence, Humes argues that in order to be sentenced under the ACCA, "the sentencing court must specifically identify the prior convictions" and engage in "detailed analysis," even when the uncontested criminal history as set forth in the PSR plainly supports the classification. Humes, however, does not point to any case that requires a district court to engage in this type of analysis, nor are we aware of any such authority.

The record shows that, at the sentencing hearing, the government recited a list of Humes's previous offenses that it considers to be "violent felonies." Humes did not object. Nor did he object when the district court later addressed him and stated that "you stand here as an armed career offender." Even on appeal, he does not argue that the 235 months of imprisonment he received—the minimum sentence in the applicable Guidelines range of 235 to 293 months—was erroneous. We therefore find that Humes has not demonstrated that there was any error in the sentence imposed, let alone a plain one.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.