*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0423p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

<div style="margin-left:2em"><em>Plaintiff-Appellee,</em></div>

<div style="text-align:right">No. 04-5403</div>

<div style="margin-left:2em"><em>v.</em></div>

ERNEST WAYNE GRUBBS,

<div style="margin-left:2em"><em>Defendant-Appellant.</em></div>

>

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 02-00084—Danny C. Reeves, District Judge.

Argued: September 18, 2007

Decided and Filed: October 17, 2007

Before: COLE and COOK, Circuit Judges; MILLS, District Judge[*]

---

## COUNSEL

**ARGUED:** Michael A. Partlow, MORGANSTERN, MacADAMS & DeVITO, Cleveland, Ohio, for Appellant. James E. Arehart, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Michael A. Partlow, MORGANSTERN, MacADAMS & DeVITO, Cleveland, Ohio, for Appellant. James E. Arehart, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEYS, Lexington, Kentucky, for Appellee.

---

## OPINION

---

R. GUY COLE, JR., Circuit Judge. A jury convicted Ernest Wayne Grubbs on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The United States District Court for the Eastern District of Kentucky sentenced Grubbs to a total of 195 months of imprisonment on this conviction as well as related charges to which he pleaded guilty. He now argues on appeal that (1) the district court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to support his felon-in-possession conviction, and (2) his case should be remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). For the reasons set forth below, we **REVERSE** and **REMAND** for an entry of a judgment of acquittal

---

[*]The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

on the felon-in-possession charge as well as for resentencing under the now-advisory Sentencing Guidelines.

## I. BACKGROUND

On October 4, 2001, Kentucky State Police officers executed a search warrant at the residence of Mae Grubbs ("Mae") in Four Mile, Kentucky, in connection with an investigation into stolen automobiles. Among the occupants of the residence during the search were Mae and her two adult sons, Paul Grubbs ("Paul") and Defendant-Appellant Ernest Wayne Grubbs ("Grubbs"). Paul lived at the house full-time with his mother. Grubbs, on the other hand, lived in South Carolina but made periodic visits to Kentucky during which he would stay with his mother and Paul. Grubbs had stayed at the house the night before the police executed the search warrant.

On July 25, 2002, Paul and Grubbs were indicted for multiple federal offenses in connection with transporting stolen vehicles, tampering with vehicle identification numbers, and operating a "chop shop." In addition, Grubbs was indicted on two counts of being a felon in possession of a firearm (counts three and five), and one count of being a felon in possession of ammunition (count four), all in violation of 18 U.S.C. §§ 922(g)(1) & 924(e)(1).[1] The firearm and ammunition charges stemmed from law enforcement's discovery of multiple guns during the search of Mae's residence.

Grubbs pleaded guilty on March 25, 2004 to three of the stolen-vehicle charges, and the Government subsequently dismissed the remainder of the related charges. Grubbs proceeded to trial on the firearm and ammunition charges.

One of the firearms recovered by the police during the search was a Beretta nine-millimeter handgun ("nine-millimeter" or "handgun"). Paul disclosed the presence of the handgun to the officers and told them it was located "up under [his] pillow."[2] (Joint Appendix ("JA") 194.) At trial, Paul testified that he owned the nine-millimeter and that he had purchased it at a flea market in London, Kentucky approximately one month before the search. The Government did not introduce any evidence contradicting Paul's testimony that the handgun was his or that it was discovered under the pillow on which he regularly slept. (*See* JA 82 (Detective Riley testified that "I know that Mae Grubbs, their mother, told me that Paul slept on the bed that had the 9mm under the mattress . . . .").) The Government also did not introduce any evidence contradicting Mae's testimony that Grubbs "slept on the couch" in a different room than where the handgun was found. (JA 108.) Moreover, although Grubbs's fingerprints were found on a rifle magazine, the Government did not introduce any evidence that Grubbs's fingerprints were found on the nine-millimeter supporting the felon-in-possession conviction.

The Government concedes that the sole evidence tying Grubbs to the nine-millimeter for purposes of establishing a violation of the felon-in-possession statute was the testimony of Edward Jones. Jones, who lived three houses away from Mae's residence, recounted an altercation with Grubbs "at least a month or two" (JA 119) before the police interviewed him in connection with their investigation of Paul and Grubbs, where Grubbs threatened him with a handgun. Jones testified

---

[1]Counts three and five charged Grubbs with unlawfully possessing different firearms. Count three charged Grubbs with being a felon in possession of a firearm on or about October 4, 2001, because he possessed a Beretta nine-millimeter and a Ruger .223 caliber rifle. Count five charged him with being a felon in possession of a firearm on the grounds that, on or about August 31, 2001, and October 4, 2001, he possessed a Marlin .22 caliber rifle and a Ruger .22 caliber pistol.

[2]There is a conflict in the record regarding whether the handgun was found under the mattress or the pillow. Detective William Riley testified that the gun was "under the mattress" and also that the gun "was underneath the pillow and the mattress was laying on the floor (JA 77, 82.) Paul testified that the gun was stowed "up under [his] pillow." (JA 194.) The exact location of the gun—whether under the pillow or under the mattress—is immaterial.

that as he was driving home one night, Grubbs flagged him down and approached the driver's side of his car. According to Jones, Grubbs "was just cussing, talking about his sister and me and my uncle was supposed to be seeing her and all that stuff, breaking her heart." (JA 121.) Although the record is not entirely clear, it appears that the dispute between Grubbs and Jones had to do with an alleged affair that Jones, a married man, was carrying on with Grubbs's sister. Jones testified that Grubbs had a "dark-colored," "automatic" pistol in his right hand, and that Grubbs threatened to shoot Jones. (JA 123-24.) When Jones noticed his wife drive up behind him, he pulled out and continued driving home. Jones's wife Reva also testified to seeing Grubbs with a gun the night of the altercation. However, Reva could not describe the gun because all she saw "was the top of the barrel." (JA 148.) At trial, she was never asked whether the recovered firearm was the same one she saw Grubbs carrying. Jones apparently never left his car, shots were never fired, and the whole episode lasted "[j]ust a matter of minutes." (*Id.*)

At trial, Jones was presented with the nine-millimeter handgun recovered from the Grubbs residence. When asked to compare the gun at trial with the gun he observed in Grubbs's hands the night of their altercation, Jones testified that the gun at trial "[l]ooked like it." (JA 124.) Jones said that he had "seen guns all [his] life" (JA 136,) but he admitted that he could not be certain that the handgun he inspected while on the witness stand was the same handgun Grubbs had carried one or two months earlier: "As far as [I] know laying another one down just like that, no, I can't say this one, that one, which one. I know it was a gun. I know it was automatic." (JA 136.) Further, Jones was asked, "Can't even say with 100% certainty that was the actual gun and not, a replica, can you?" (JA 137.) Jones responded, "It could have been. It was a gun. I don't know whether it was a real gun, toy gun, or what. It was a gun." (JA 137.)

Both at the close of the prosecution's case-in-chief, and at the close of all the evidence, Grubbs moved for a judgment of acquittal on all three counts. The district court denied the motion as to counts three and four, but granted it as to count five. On November 25, 2003, the jury convicted Grubbs on count three, finding that he unlawfully possessed the nine-millimeter handgun, but not the Ruger .223 caliber rifle that was also charged in count three. The jury acquitted Grubbs on count four, the felon-in-possession-of-ammunition charge. Following the jury's verdict, Grubbs again moved for judgment of acquittal as to count three, but the district court denied his motion. Grubbs also moved for a new trial on the grounds that the Government had failed to disclose material evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court denied Grubbs's motion for a new trial.

The district court sentenced Grubbs on March 25, 2004, on both the stolen-vehicle charges to which he had pleaded guilty and the felon-in-possession-of-a-firearm charge, of which the jury convicted him. Relying on the then-mandatory Sentencing Guidelines and the Presentence Investigation Report, the district court calculated a base offense level of 33 and a criminal history category of IV. This suggested a Guidelines range of 188 to 235 months of imprisonment. The court sentenced Grubbs to 195 months on count three, the felon-in possession charge, 120 months on each of counts seven and eleven, the stolen vehicle charges, and 60 months on count fifteen, the charge for altering vehicle identification numbers, all to be served concurrently.

## II. DISCUSSION

On appeal, Grubbs argues that (1) the district court erred in denying his motion for judgment of acquittal as to count three of the indictment because the evidence was insufficient to support his felon-in-possession conviction; (2) the district court erred in denying his motion for a new trial; and (3) the case must be remanded for resentencing in light of *Booker*. Each of these arguments will be discussed in turn.

### A.    Sufficiency of the Evidence

Because Grubbs moved for a judgment of acquittal twice during the trial—at the close of the prosecution's case and at the close of all the evidence—we review his motion for judgment of acquittal de novo. *United States v. Kone*, 307 F.3d 430, 433 (6th Cir. 2002). In a sufficiency-of-evidence challenge to a conviction, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[W]e will reverse a judgment for insufficiency of evidence only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *Id.* But while this means "we do not weigh the evidence" or "assess the credibility of the witnesses," *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994), this Court's power of review in these cases is not toothless. We have defined substantial evidence as being "more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967).

The following three elements comprise the offense of being a felon in possession of a firearm: (1) the defendant had a previous felony conviction, (2) the defendant knowingly possessed the firearm specified in the indictment, and (3) the firearm traveled in or affected interstate commerce. *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (internal quotations and citation omitted). The only argument raised by Grubbs is whether, after reviewing the evidence, we can reasonably conclude that the Government established that he possessed the nine-millimeter handgun.

Under 18 U.S.C. § 922(g)(1), a defendant may be convicted based on either actual or constructive possession of a firearm. Actual possession requires that the defendant have "immediate possession or control" of the firearm. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973). In the instant case, the Government does not argue that Grubbs had physical control over the nine-millimeter handgun found under his brother Paul's mattress at the time of the arrest. Nor is there any basis for concluding so: the Government presented no evidence that Grubbs had immediate access to the weapon. The mere fact that the police arrested Grubbs in the same house where they found a handgun is, without more, insufficient to support a conviction for actual possession.

"Constructive possession exists when a person does not have possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* In contrast to a situation where the defendant has physical contact with a firearm—e.g., he holds it, holsters it, or keeps it in a place where it is immediately accessible—constructive possession may be proven if the defendant merely had "dominion over the premises where the firearm is located." *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007) (internal quotations and citation omitted).

However, it is without question that "'[p]resence alone' near a gun . . . does not 'show the requisite knowledge, power, or intention to exercise control over' the gun to prove constructive possession." *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (quoting *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976)). "[O]ther incriminating evidence, coupled with presence" is needed to "tip the scale in favor of sufficiency." *Id.* Furthermore, it is not enough that the defendant possessed a firearm at some unidentified point in the past; the evidence must prove that the defendant possessed the same handgun "identified in the indictment." *Id.*; *accord United States v. Schreane*, 331 F.3d 548, 560 (6th Cir. 2003) (defendant must knowingly possess the firearm "specified in the indictment").

In assessing the sufficiency of evidence to support Grubbs's conviction, we are left with the question, how incriminating does the evidence have to be to support a finding of constructive possession? Though it would be unreasonable, and perhaps impossible, to expect a crystal clear path forward in such fact-intensive inquiries, our prior cases demonstrate at least one common thread: When the defendant is found in close proximity to a firearm at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less. *See, e.g.*, *United States v. Black*, 525 F.2d 668, 669 (6th Cir. 1975) (holding direct testimony tying a defendant to a gun was not required when the gun was found in the defendant's truck and when the defendant had both ammunition for the gun and a rack in which it could have been kept). Of course, this means the opposite should also be true—the less evidence tying a defendant to a gun at the time of arrest, the greater the circumstantial evidence must be to support a conviction.

For example, if a defendant is found with a firearm under the seat of the car he is driving, and he is the lone passenger of the car, we may require less evidence to infer that he knowingly has the power and intention to exercise dominion and control over the discovered firearm. *See, e.g.*, *United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997) (upholding conviction where the defendant was the only person in the vehicle and the weapon was found on the seat immediately next to where he had been sitting). However, if a defendant is charged in California with constructive possession of a firearm found in Maine, the incriminating evidence that he had dominion and control over the same firearm should be comparatively stronger. Establishing constructive possession in such a case cannot, and should not, be as easy as a witness testifying that he saw the defendant with an unspecified gun at some unspecified point in time. *See, e.g.*, *Craven*, 478 F.2d at 1333-34 (finding constructive possession where a gun was found in a residence he was in, but only where the government's evidence showed (1) the gun was found in the master bedroom, a room in which monogrammed men's shirts bearing the defendant's initials were found, and (2) testimony which reasonably indicated that the defendant slept in the room and therefore had constructive joint possession of it).

In light of these principles, and when reviewing the record before us, we conclude that no rational trier of fact could conclude that Grubbs constructively possessed the Beretta nine-millimeter handgun. It would be one thing if Grubbs owned the home where the handgun was found, *see Craven*, 478 F.2d 1329 (affirming conviction when the defendant owned the house); or if he had some contact with the room where it was found, *see Birmley*, 529 F.2d 103 (affirming conviction where the defendant drove the vehicle and had access to the trunk where weapons were found); or if he knew of its location. Instead, Grubbs was merely a temporary guest, who, according to the testimony of his mother, visited approximately every "month or so" and only "slept on the couch." (JA 105, 108.) Of course, the jury may choose not to credit testimony that Grubbs's brother Paul owned the nine-millimeter and we must accept such findings. But even if the jury disbelieved all the witnesses, that disbelief alone cannot constitute affirmative proof of constructive possession. *United States v. Mills*, 29 F.3d 545, 550 (10th Cir. 1994). The Government still has the burden to come forward with evidence connecting Grubbs with the firearm.

Although we have sustained a conviction for constructive possession when the weapon is found in areas over which the defendant exercised control, such as his bedroom, when a defendant is convicted of constructive possession of a firearm found in another person's home, this Court has required more than mere conjecture. It is in precisely these types of cases, where the inference of dominion and control at the time of the arrest is weak, that we have required significantly more persuasive evidence to "tip the scale in favor of sufficiency." *Birmley*, 529 F.2d at 108.

In *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984) for example, the police found Beverly and another person (Austin) in the kitchen of yet another person's (Hatfield's) residence. *Id.* at 35. While patting down Beverly and Austin, the officer noticed two handguns in a waste

basket between the two individuals. *Id.* Beverly's fingerprints were later found on one of the guns. Yet, this Court held that these facts were insufficient to prove constructive possession. The evidence "establishe[d] only that Beverly was in the kitchen of Hatfield's residence, that Beverly was standing close to a waste basket which contained two guns, and that Beverly had at some point touched one of the guns." *Id.* at 37. It goes without saying that, in the instant case, the evidence of constructive possession does not rise to the level that we rejected as insufficient in *Beverly*. Grubbs was not located near the room in which the guns were discovered, nor were any fingerprints found on the handgun. We are left with almost no inferential evidence connecting Grubbs to the nine-millimeter found underneath the mattress of his brother's bed at the time of arrest.

Given the paucity of evidence connecting Grubbs to the nine-millimeter, the Government asks us to rely on the testimony of Edward Jones to bridge the evidentiary gap. We decline to do so. Jones's recount of his altercation with Grubbs does not provide the substantial evidence we need to uphold a conviction for constructive possession. Jones's testimony reveals only two defining features of the gun he witnessed Grubbs holding weeks, if not months, earlier: (1) that it was "dark-colored," and (2) that it was "automatic." (JA 123-24.) At best, this testimony suggests that Grubbs possessed a black, semiautomatic firearm at some point before the arrest. It is a tenuous leap—a leap this Court refused to make in *Beverly*—to infer from Grubbs's earlier possession that he constructively possessed the same black, semi-automatic gun recovered from his brother's bedroom at the time of the arrest. Although it is true that the recovered firearm matched Jones's generic description, these attributes are too common to support a conviction for constructive possession. *See United States v. Hishaw*, 235 F.3d 565, 571-72 (10th Cir. 2000) (testimony that the defendant was seen with a semiautomatic pistol on several prior occasions was "simply too remote and too vague to support the inference that [the defendant] constructively possessed the pistol" found in the car); *United States v. Taylor*, 113 F.3d 1136, 1145 (10th Cir. 1997) (testimony that the defendant possessed a gun on a prior occasion was insufficient to support constructive possession where the defendant jointly occupied an apartment in which a handgun was discovered); *Mills*, 29 F.3d at 549-50 (defendant's handling of guns six days before the charged offense did not establish constructive possession); *United States v. Kelso*, 942 F.2d 680, 681-82 (9th Cir. 1991) (use of weapon in prior offenses was insufficient to establish constructive possession of a gun found behind the driver's seat, despite the defendant's access to the gun).

Our decision today is in harmony with this Court's recent decision in *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007). There, the Court concluded that there was sufficient evidence connecting the defendant, Joseph Arnold, to a recovered firearm on the basis of "eyewitness testimony describing a firearm actually possessed by the defendant that matche[d] a firearm later recovered by the police." *Id.* at 183. Tamica Gordon, the daughter of Arnold's girlfriend, called 911 complaining that Arnold had threatened her with a gun at the house that Gordon lived in with her mother. The police arrived about five minutes after the 911 operator dispatched them to the house. *Id.* at 179-80. Gordon described the gun to the police as a "black handgun," and based on the way she described Arnold cocking the weapon, the police concluded that it was a semiautomatic handgun and that it would have a round chambered in it. *Id.* at 180-81. Shortly after the officers arrived, Gordon's mother drove up to the residence with Arnold sitting in the vehicle's passenger seat. Gordon identified Arnold as the man who had threatened her with a gun. Upon searching the car, the police discovered a black semiautomatic handgun with a chambered round inside a plastic bag underneath the passenger seat where Arnold had been sitting. *Id.* at 183.

Although the Court concluded that the evidence was sufficient to support a finding of constructive possession, the gun found in *Arnold* was discovered in close physical proximity to the defendant. Indeed, the police found it directly beneath the vehicle passenger seat on which Arnold was sitting. Thus, the link between the firearm and the defendant at the time of the arrest was particularly strong. In contrast, the police found the nine-millimeter at issue here under a pillow on a bed used only by Grubbs's brother Paul. Although the jury may not have credited Paul's

testimony, including his testimony that it was *his* gun and that it was stowed underneath *his* pillow, the Government did not introduce any evidence connecting Grubbs to the particular room of the house or to the bedding in which the gun was found.

Moreover, the "other incriminating evidence" in *Arnold* was significantly more persuasive than the case at hand. Only minutes elapsed between the defendant threatening the victim and the police finding the gun. Generally indirect testimony has only been considered sufficient to support a felon-in-possession conviction in cases where the testimony is contemporaneous with the arrest. In *Arnold*, for instance, "the defendant threatened the victim with a gun minutes before the police found a gun under his car seat, and that same gun matched the description of the gun the defendant used to threaten the victim." 486 F.3d at 183. But where the only evidence connecting the defendant to the gun was that the defendant at some point in the past and in some other place possessed some type of gun, the conviction cannot be sustained.

Here, there is no such temporal proximity between Jones's observations of Grubbs holding a handgun and the police officers' subsequent discovery of the nine-millimeter during the search of Mae's house. The search occurred on October 4, 2001. Jones testified that his altercation with Grubbs took place "at least a month or two" (JA 119) before the police interviewed him in connection with their investigation of Paul and Grubbs. Although the record does not establish when this interview occurred, counsel for the Government implied while questioning Grubbs that it happened on October 24, 2001. Assuming that October 24 is the correct date of the interview and that Jones's altercation with Grubbs occurred only one month and not two months earlier, on September 24, then ten days would have elapsed between when Jones saw Grubbs with a handgun and when the police found the nine-millimeter while executing the search warrant. Of course, ten days is the minimum amount of time, based on Jones's testimony, that elapsed between the two events; it could have been more than a month. This is far more time than the minutes that elapsed in *Arnold*.

Finally, Jones's testimony does not go to the actual possession of the nine-millimeter, but instead suggests that at some earlier time, Grubbs might have possessed some dark-colored handgun that was never recovered. To sustain a conviction, the evidence must show that the defendant "possess[ed] the firearm and ammunition specified in the indictment." *Schreane*, 331 F.3d at 560. In this case, the grand jury charged that "[o]n or about October 4, 2001 . . . [Grubbs] did knowingly possess . . . a Beretta, nine-millimeter pistol . . . ." (JA 19.) Grubbs was *not* charged or convicted based on the actual possession of a weapon during the altercation with Jones, which happened "at least a month or two" before the investigation, but instead for the constructive possession of the nine-millimeter found during the search of Mae's house, which occurred on October 4, 2001. In light of this, Jones's testimony referring to a dark-colored handgun was too vague for the jury to reasonably conclude that the gun found in Mae's house was the same firearm that Grubbs allegedly used to threaten Jones.

In sum, viewing the evidence in the light most favorable to the Government, we must assume that the jury credited Jones's testimony about seeing Grubbs with a pistol that "looked like" the handgun shown to him at trial. Even making this assumption, however, and "respect[ing] the jury's inferences over" any contrary inferences that one might make, *Arnold*, 486 F.3d at 182, we cannot say that "*any* rational trier of fact," *Jackson*, 443 U.S. at 319, could conclude beyond a reasonable doubt that Grubbs possessed the nine-millimeter handgun, constructively or otherwise. Therefore, we remand the case for an entry of a judgment of acquittal on count three.

### B. The Motion for a New Trial

Grubbs also appeals the district court's denial of his motion for a new trial, arguing that because the evidence did not support a finding that he possessed the handgun, he should have been

afforded a new trial.  In the district court, Grubbs's motion for a new trial was predicated not on the contention that the verdict was against the weight of the evidence, but on a purported *Brady* violation.

Given that, on appeal, Grubbs's argument for a new trial is now the same as his argument for why he is entitled to a directed verdict, irrespective of whether the Court reverses the district court's denial of Grubbs's motion for a judgment of acquittal, or affirms Grubbs's conviction, Grubbs's motion for a new trial is moot.  Moreover, Grubbs has waived the argument that he is entitled to a new trial based on the verdict being against the weight of the evidence, because he did not present this argument to the district court.  *United States v. Lutz*, 154 F.3d 581, 589 n.2 (6th Cir. 1998) (stating that the failure to move in the district court for a new trial based on the verdict being against the manifest weight of the evidence bars appeal of this issue).

### C.      Resentencing

Grubbs contends that because he was sentenced prior to the Supreme Court's decision in *Booker*, his case must be remanded for resentencing now that the Guidelines are advisory.  The Government concedes that resentencing is necessary "because the district court treated the Sentencing Guidelines as mandatory."  (Gov't's Br. 8.)  Accordingly, we  remand to the district court for a new sentencing determination consistent with the decisions of the Supreme Court and this Court since *Booker* was decided.  *See, e.g.*, *Rita v. United States*, 127 S. Ct. 2456 (2007); *United States v. Liou*, No. 06-4405, 2007 U.S. App. LEXIS 17232, *6 (6th Cir. July 20, 2007) (noting that, post-*Booker*, a district court's imposition of sentence is reviewed for both procedural and substantive reasonableness).

## III.  CONCLUSION

For the reasons set forth above, we **REVERSE** and **REMAND** the case for entry of a judgment of acquittal on count three of the indictment and **REMAND** for resentencing on counts seven and eleven, the vehicle-theft charges, and count fifteen, the charge for altering vehicle identification numbers.