NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0686n.06

No. 20-5141

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,            )
                                     )
        Plaintiff-Appellee,          )
                                     )
v.                                   )      ON APPEAL FROM THE
                                     )      UNITED STATES DISTRICT
SHUNTARIO JOHNSON,                   )      COURT FOR THE WESTERN
                                     )      DISTRICT OF TENNESSEE
        Defendant-Appellant.         )
                                     )

FILED
Dec 09, 2020
DEBORAH S. HUNT, Clerk

Before: KETHLEDGE, DONALD, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. In January 2018, Shuntario Johnson asked a friend to drive him to pick up some marijuana. On the way back, Johnson put a gun to the back of his friend's head, forced him out of the car, and shot at him as he ran away. About two weeks later, Johnson was caught walking away from the scene of a purported stash house robbery. Johnson pulled a gun, pointed it at federal agents, and then took off running into a field. A jury convicted Johnson of carjacking, using a firearm during a crime of violence, being a felon in possession, and conspiracy to possess with intent to distribute cocaine. The district court sentenced him to 371 months in prison. He appeals. We AFFIRM.

I.

On January 9, 2018, Ricky Stevenson got a call from Shuntario Johnson, a friend from work. Johnson asked Stevenson to drive him and his brother-in-law to pick up some marijuana. While at a stop sign on the way back, Stevenson felt a gun on the back of his head. He looked

over to see Johnson's brother-in-law pointing a gun at him too. Stevenson leapt out of the car when he saw Johnson climbing over into the driver's seat. Johnson then stepped out of the car and started shooting. As Stevenson fled, he heard bullets whiz past him and saw sparks on the ground as they hit the street. After reaching a safe distance, Stevenson called the police. The police recovered two shell casings from the scene.

Meanwhile, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began investigating Marcus Danner, whom they suspected of being a particular brand of robber—a robber of drug dealers. An undercover agent, posing as a disgruntled drug runner, told Danner that he wanted to hire a team to rob the stash house of the Mexican drug cartel he worked for. He told Danner he expected to find twelve to fifteen kilograms of cocaine stored there. Danner said he had a team that could do it. They planned to split the proceeds.

Johnson and another co-conspirator, Quintez Agnew, were part of that team. On January 25, 2018, Danner, Johnson, and Agnew met at Agnew's house before they were due to meet the undercover agent for the robbery. Johnson took a red sheet and tore it into strips so that, when they got inside, they could "tie the Mexicans up." Johnson was to go in first, since he had the gun.

The ATF had set up a storage unit as the "stash house." When Johnson, Danner and Agnew arrived at the storage facility, Johnson exited the car and remained outside. The others entered the facility where they were arrested.

Two agents sitting in a car on the perimeter of the storage facility saw Johnson walking away from the entrance. When they drove up to Johnson, he turned, pointed a gun at them, and then fled into an adjacent field. ATF agents were able to catch Johnson and, after conducting a grid search of the field, found both the gun (a Ruger, 9mm handgun) and the red-sheet strips. Johnson had seventeen bullets in his pocket when he was arrested.

After the takedown, Danner told agents about another robbery that he, Johnson, Agnew, and another co-conspirator, John Lott, had committed on January 22, just days before the sting. They had planned to rob a known drug dealer of his cocaine stash. But a woman was shot during the robbery, and the men ran out of the house with nothing. Federal agents recovered one shell casing from the scene of that crime.

Later, ATF agents took the Ruger recovered from the field, fired test casings through it, and entered the information about those shell casings into a national database. The test casings possibly matched casings recovered from a carjacking on January 9. Agents later compared the shell casings recovered from the January 9 carjacking, the January 22 attempted robbery, and the test casings fired from the Ruger found on January 25. They all matched.

The government charged Johnson with ten counts relating to the January 9 carjacking, the January 22 attempted robbery, and the January 25 stash house sting. Danner and Lott pleaded guilty to various offenses, and Agnew passed away before trial.

For the January 9 carjacking, the government charged Johnson with carjacking, during which he discharged a firearm, in violation of 18 U.S.C. § 2119 (Count Two); use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Three); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Four). For the January 22 attempted robbery, it charged aiding and abetting attempted robbery, during which he discharged a firearm, in violation of 18 U.S.C. §§ 2 and 1951(a) (Count Five); aiding and abetting the use of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii) (Count Six); and aiding and abetting being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 2 and 922(g)(1) (Count Seven). For the January 25 stash house sting, it charged him with conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(a) (Count One); conspiracy

to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 812 and 846 (Count Eight); aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A) (Count Nine); and aiding and abetting being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 2 and 922(g)(1) (Count Ten). The conspiracy counts (One and Eight) applied to the January 22 attempted robbery as well.

Before trial, Johnson moved to sever Counts Two, Three, and Four (the "carjacking-related counts") from the remainder of the indictment. A magistrate judge determined that the carjacking-related counts had been misjoined under Federal Rule of Criminal Procedure 8(a) and recommended that they be severed. The district court disagreed, however, and ordered that all counts be tried together. *United States v. Johnson*, No. 2:18-20027-JTF, 2019 WL 4806345, at *3–4 (W.D. Tenn. Oct. 1, 2019) (order).

Johnson proceeded to trial, and a jury convicted him on each of the carjacking-related counts and also of the conspiracy count related to the stash house robbery (Count Eight). The jury acquitted him of the rest. The court sentenced him to 371 months—71 months on Counts Two, Four, and Eight, to be served concurrently, and 300 months for Count Three, to be served consecutively.[1] Johnson appeals his conviction and his sentence.

II.

Johnson challenges the trial proceedings on six grounds. For the reasons that follow, we find no reversible error.

---

[1] The judgment says that Johnson received a 300-month sentence for Count Four, not Count Three. This appears to be a clerical error. The 300-month sentence refers to the § 924(c) offense, which is Count Three, not Count Four.

A.

Johnson first argues that the district court erred in denying his motion to sever the carjacking-related counts from the rest of the indictment. Offenses may be joined in the same indictment and for trial if they are "of the same or similar character," "based on the same act or transaction," or are "connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Whether joinder is proper is "determined by the allegations on the face of the indictment." *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002).

Johnson argues that the carjacking-related counts were misjoined with the conspiracy, narcotics, and robbery counts. Johnson was the only defendant charged with the carjacking-related counts. The indictment does not allege that the carjacking was done in furtherance of the robbery and narcotics-possession conspiracies. So, on the face of the indictment, the only apparent connection between the carjacking-related counts and the rest is the allegation that Johnson used a Ruger, 9mm handgun in all of the offenses and that he committed them all during the same month. This, Johnson argues, does not suggest that the carjacking-related counts are either connected with or similar to the others.

The government contends that these counts were properly joined because they allege offenses of a "similar character," in that they all involve "violent robberies." And, the government argues, Johnson's use of the same handgun in each crime means that proof of each crime would have been admissible to prove identity, even in separate trials. *See United States v. Wirsing*, 719 F.2d 859, 863 (6th Cir. 1983).

We need not resolve this question because, even if the counts were misjoined, we may not grant relief if the error was harmless—that is, if it did not "affect" Johnson's "substantial rights." Fed. R. Crim. P. 52(a). "To affect a defendant's substantial rights, misjoinder must have a

'substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Locklear*, 631 F.3d 364, 369 (6th Cir. 2011) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). "The Government bears the burden of persuading us that an error is harmless." *Id.* But the criminal defendant should put the question in issue, by pointing us, and the government, to the ways he believes he was harmed. *See United States v. Montgomery*, 969 F.3d 582, 583 (6th Cir. 2020) (order) (deeming issue forfeited where defendant failed to argue why error was not harmless). Here, Johnson has not argued that he suffered any harm from the alleged misjoinder; he does not even respond to the government's arguments suggesting a lack of harm. We could, therefore, consider the issue abandoned. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (alterations adopted) (citation omitted)). But we are persuaded, in any event, that any misjoinder here was harmless.

"Error based on misjoinder is almost always harmless where . . . the trial court issues a careful limiting instruction to the jury on the issue of possible prejudice resulting from the joinder." *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007). Here, the trial judge gave the jury the following instructions:

> The number of charges is no evidence of guilt, and this should not influence your decision in any way. It is your duty to separately consider the evidence that relates to each charge, and to return a separate verdict for each one. . . . Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on any of the other charges. You must be convinced that the government has proved all of these elements as to each count beyond a reasonable doubt in order to find the defendant guilty of any of these.

These instructions are nearly identical to instructions that we held cured misjoinder errors in *Cody*, 498 F.3d at 588, and *Chavis*, 296 F.3d at 462. In those cases, as here, the trial court reminded the

jury that multiple charges do not indicate guilt; that the evidence for each charge should be considered separately; that it must consider whether the government had met its burden of proof for each individual charge; and that the jury's decision on one charge should not influence its decision on another. The fact that the jury acquitted Johnson on six of the ten counts indicates that the jury was able to compartmentalize the evidence and consider each charge separately. *See Cody*, 498 F.3d at 588; *Chavis*, 296 F.3d at 462. The instruction given by the trial court here sufficed to cure any possible jury confusion resulting from the joinder.

There was, moreover, strong evidence of guilt on both counts. *See Locklear*, 631 F.3d at 370; *Chavis*, 296 F.3d at 463. With respect to the carjacking, Stevenson, the victim, knew Johnson from work and identified him as the carjacker. Stevenson said that Johnson had a gun and started shooting at him, and the ballistics evidence linked the shell casings found at the carjacking scene to the gun that Johnson tossed in the field after the ATF sting. With respect to the narcotics conspiracy, Johnson met Danner and Agnew at Agnew's house on the day of the sting. He tore up sheets in preparation. He traveled to the sting with Danner and Agnew. He knew that they were robbing a stash house with cocaine. And he was caught near the entrance to the facility where the sting occurred. The strong evidence of Johnson's guilt presented at trial, when coupled with the curing instruction, shows that any possible misjoinder was harmless.

B.

Johnson next challenges the jury instructions for Count Four, which charged Johnson with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He also argues that the district court erred by failing to clarify the instruction when the jury asked about it during deliberations. But Johnson did not object either to the original instruction or to the clarification given at trial, so we review for plain error. *United States v. Morrison*, 594 F.3d 543, 546 (6th Cir.

-7-

2010). "In the context of challenges to jury instructions, plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *Id.* (quoting *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006)).

Our model jury instruction for § 922(g)(1) lists three elements required for conviction. *See* Sixth Cir. Pattern Crim. Jury Instructions § 12.01. The second element reads: "That the defendant, following his conviction, knowingly possessed a firearm specified in the indictment." *Id.* Johnson's proposed instruction for this count suggested replacing "firearm specified in the indictment" with "Ruger 9mm, semiautomatic handgun."

At the close of evidence, the district court asked the parties if they wanted to submit any specific jury instructions. Johnson's counsel noted that he had emailed a copy of his proposed instructions, which were "basically just the model jury instructions." He added that he requested "one or two special [instructions]" and drew the court's attention to two of them. But he said nothing about his request to use the specific language identifying the Ruger in the instructions for Count Four. That request appears to have been buried in sixty-seven pages of proposed jury instructions. And "[m]erely proposing a jury instruction is insufficient to preserve an objection." *United States v. Semrau*, 693 F.3d 510, 527 (6th Cir. 2012).

The indictment charged Johnson with three violations of § 922(g)(1), one count for each of the three January 2018 incidents. In its instructions to the jury, the district court combined the instructions for these three counts. It told the jury that it could convict if it found that Johnson, "following his conviction, knowingly possessed a firearm on the dates specified in the indictment." Johnson argues that this instruction was misleading because it stated that the jury could convict him for possessing any firearm on the dates in question instead of the Ruger specified in the

indictment. In other words, the phrase "specified in the indictment" modified "the dates" instead of "a firearm."

But even if these instructions were misleading, the jury asked for clarification on this exact point. It submitted a question that asked: "In the indictment, related to the firearm, are we to be specific about the Ruger or possession of a or any firearm?" Before answering, the court consulted with counsel. Defense counsel said, "I understand the Court may not want to come out and say it has to be the Ruger, but I think the Court probably has to say it has to be the firearm specified in the indictment." The court agreed and told the jury, "I'm going to refer you to the language of the indictment. The indictment sets out what the exact charge is against the defendant. So look to the charges in the indictment, the firearm charges or whatever to know about the firearm. Do you understand what I'm saying? . . . So each of the firearms charges, just refer to the language in the indictment." Defense counsel made no objection to this instruction.

We find no fault with the district court's response to the jury's question and conclude that it cured any defect in the original instruction. *See Clarksville-Montgomery Cnty. Sch. Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1003–04 (6th Cir. 1991) ("Even where a portion of the charge is erroneous, if the point is explained and corrected . . . so that the jury will not be misled, the jury's verdict should be affirmed."). The jury asked whether it could find that Johnson possessed any firearm or if it had to be a specific gun. The court said to refer to the specific language in the indictment. This is nearly the same as the Pattern Jury Instruction on this point: "That the defendant . . . knowingly possessed a firearm specified in the indictment." Sixth Cir. Pattern Crim. Jury Instructions § 12.01. We find the court's instruction neither wrong nor misleading. *See United States v. Damra*, 621 F.3d 474, 499 (6th Cir. 2010) ("We regularly look to whether jury

instructions mirror or track the pattern instructions as one factor in determining whether any particular instruction is misleading or erroneous.").

On the whole, the district court's instructions "adequately inform[ed] the jury of the relevant considerations and provide[d] a sound basis in law to aid the jury in reaching its decision." *United States v. Fisher*, 648 F.3d 442, 447 (6th Cir. 2011) (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993)). They certainly did not "produce [the] grave miscarriage of justice" required to show plain error. *Morrison*, 594 F.3d at 546.

C.

Next, Johnson argues that there was a prejudicial variance in Count Four of the indictment. Because Johnson, again, made no objection at trial, we review for plain error. *United States v. Bradley*, 917 F.3d 493, 501 (6th Cir. 2019).

A variance occurs when "the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Mize*, 814 F.3d 401, 409 (6th Cir. 2016) (quotations omitted). Johnson argues that, with respect to the January 9 carjacking events, he must have been convicted for being a felon in possession of a gun other than the Ruger, 9mm handgun specified in Count Four of the indictment. We disagree.

To prove this count, the government presented evidence that a Ruger, 9mm, semiautomatic handgun was recovered on January 25 after Johnson tossed it into a field while fleeing from ATF agents. Stevenson, the victim of the January 9 carjacking, identified Johnson and said that during the carjacking Johnson had threatened him with a gun that had a "silver top on it." This matched the description of the Ruger found in the field. More importantly, the shell casings found at the scene of the carjacking matched the shell casings fired from the Ruger recovered in the field.

The government did not allege or present evidence that other guns were used. The facts presented at trial were consistent with the allegations in the indictment. There was no variance.

D.

Johnson next argues that the district court erred by sustaining a hearsay objection during his cross-examination of officer Trace Cisneros. We review a district court's evidentiary rulings for abuse of discretion. *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007).

While cross-examining Cisneros, defense counsel asked him to recount what Stevenson had told him after the carjacking about the seating positions of Johnson and his brother-in-law in the car. The government objected on hearsay grounds. Defense counsel responded that he was not offering Stevenson's statement for the truth of the matter asserted, but rather to impeach Stevenson's credibility, by showing that Stevenson's testimony at trial contradicted what he had previously told Cisneros. But because counsel had not laid a foundation for this line of questioning with Stevenson, the court sustained the objection. This was not an abuse of discretion.

Johnson had hoped to elicit testimony from Cisneros that would reveal a discrepancy between the way Stevenson had described the location of the car's occupants during the carjacking and how he had described the same scene at trial. He wished to use that inconsistency to cast doubt on Stevenson's credibility as a witness. This is perfectly permissible; however, Johnson was required also to question Stevenson, either before or after Cisneros testified, about his prior inconsistent statements. "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it." Fed. R. Evid. 613(b); *see also* Fed. R. Evid. 613(b) advisory committee note. Because Johnson failed to question Stevenson about his statements to Cisneros, the district court did not err by cutting off this line of questioning.

Johnson next argues that Stevenson's statements should have been admitted under one of several hearsay exceptions—under the residual exception, Fed. R. Evid. 807, as a present sense impression, Fed. R. Evid. 803(1), or as an excited utterance, Fed. R. Evid. 803(2). But Johnson did not press these arguments at trial. So we review for plain error. *United States v. Arnold*, 486 F.3d 177, 193–94 (6th Cir. 2007) (en banc).

To prevail on plain error review, Johnson must demonstrate, among other things, that the error affected his substantial rights. *Id.* at 194. That means he must show "'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004)). Johnson cannot make this showing. Johnson hoped to elicit evidence contradicting Stevenson's testimony about where Johnson and his brother-in-law were sitting in the car during the carjacking. But that evidence could have done little to undermine Stevenson's testimony implicating Johnson in the carjacking: that he knew Johnson personally, felt Johnson put a gun to his head, and saw Johnson shoot at him before running away. Johnson cannot show plain error.

Lastly, Johnson argues that by limiting his cross-examination of Cisneros, the district court effectively precluded him from presenting a defense. He analogizes his case to *Chambers v. Mississippi*, 410 U.S. 284 (1973). We find the situations not remotely similar.

At Leon Chambers' trial for murder of a police officer, he tried to present evidence that another man, Gable McDonald, had confessed to the murder. *Id.* at 291–94. But state rules of evidence rendered Chambers "unable either to cross-examine McDonald or to present witnesses in his own behalf" who had heard McDonald's confession. *Id.* at 294. The Supreme Court held that violated due process. *Id.* at 302.

Johnson's situation is vastly different. To start, as the district court noted, defense counsel had a "full opportunity to question Mr. Stevenson," including by asking about his previous statements to the police. He simply failed to do so. It cannot be said that Johnson was "denied an opportunity to subject [Stevenson] . . . to cross-examination." *Id.* at 295. Furthermore, to the extent that he hoped to use Cisneros as a witness in his own defense, Johnson was free to question him too, provided that he also questioned Stevenson. *See* Fed. R. Evid. 613(b). But, again, he failed to do so. "[T]he accused . . . must comply with established rules of procedure and evidence." *Chambers*, 410 U.S. at 302. Finally, as explained above, the hoped-for testimony was hardly "critical to [Johnson]'s defense." *Id.* Johnson's case is wholly unlike *Chambers*, and his due process rights were not violated.

E.

Johnson next argues that the district court erred in denying his motion for a judgment of acquittal on each count of conviction. We must affirm if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hendricks*, 950 F.3d 348, 352 (6th Cir. 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction." *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) (quotations omitted).

To start, Johnson makes no effort to explain why the evidence was insufficient to convict him on Count Eight, conspiracy to possess with intent to distribute cocaine. Johnson has forfeited that argument. *See United States v. Persaud*, 866 F.3d 371, 385 (6th Cir. 2017).

Count Two charged Johnson with carjacking, in violation of 18 U.S.C. § 2119. To prove this charge, the government had to show that Johnson: "(1) with intent to cause death or serious

bodily harm, (2) took a motor vehicle, (3) that had been transported, shipped, or received in interstate or foreign commerce, (4) from the person or presence of another (5) by force and violence or intimidation." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008) (citing 18 U.S.C. § 2119).

The evidence against Johnson was substantial. Stevenson testified about the entire encounter. He could identify Johnson because they had worked together. He said that Johnson put a gun to the back of his head, forcing him out of the car, and that Johnson actually shot at him, which was corroborated by the shell casings found at the scene. A special agent from the National Insurance Crime Bureau testified that the car had traveled across state lines. A reasonable juror could have found that the government proved the essential elements of the crime beyond a reasonable doubt.

Count Three charged Johnson with knowingly using and discharging a firearm during and in relation to a crime of violence (the carjacking) in violation of 18 U.S.C. § 924(c)(1)(A)(iii). To prove this charge, the government had to first prove the carjacking, and then show that Johnson: (1) knowingly used a firearm; (2) "during and in relation to" the carjacking; and (3) that in the course of committing the carjacking, Johnson discharged the firearm. 18 U.S.C. § 924(c)(1)(A)(iii); *see United States v. Lloyd*, 10 F.3d 1197, 1212 (6th Cir. 1993). The same evidence that supported Count Two provides substantial support for every element of this charge. A reasonable juror could find each element of this charge beyond a reasonable doubt.

Count Four charged Johnson with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), on or about January 9, 2018. To prove this charge, the government had to show that: (1) Johnson knew he had a prior felony conviction; (2) he knowingly possessed the firearm specified in the indictment; and (3) the possession was in or affected interstate commerce.

*See Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019); *United States v. Davis*, 577 F.3d 660, 671 (6th Cir. 2009).

Johnson stipulated before trial to having a prior felony conviction, and an ATF agent testified that the gun Johnson tossed into the field had traveled across state lines. Johnson claims that insufficient evidence supported the second element.

At bottom, Johnson complains of an alleged inconsistency between the jury's acquittal on Count Ten and its conviction on Count Four. The jury acquitted Johnson of being a felon in possession (the same crime charged in Count Four) on January 25, 2018, the day he was caught fleeing from the ATF sting. Johnson argues that because the jury acquitted him of possessing the Ruger on January 25, that broke the chain that connects the Ruger to the other crimes. Accordingly, he argues, the jury could not logically convict him of being a felon in possession of the Ruger on January 9.

But "[e]ach count in an indictment is regarded as if it [were] a separate indictment," *Dunn v. United States*, 284 U.S. 390, 393 (1932), and inconsistent verdicts are generally not reviewable, *United States v. Randolph*, 794 F.3d 602, 610 (6th Cir. 2015). We do not compare jury verdicts against each other, coming to our own conclusions about what is logical; instead we perform an "independent review of the sufficiency of the evidence" for each conviction. *United States v. Powell*, 469 U.S. 57, 67 (1984). We conclude, after reviewing the evidence presented, that a reasonable juror could have found beyond a reasonable doubt that Johnson knowingly possessed the Ruger specified in the indictment on January 9, 2018.

Stevenson testified that Johnson's gun had a silver top. That description matches the Ruger recovered in the field on January 25. Officers recovered bullets from the scene of the carjacking that matched those fired from the Ruger. ATF agents saw Johnson point a gun at them and then

take off into a field. They testified that the gun Johnson pointed at them had red ties attached to it; the Ruger recovered in the field after agents captured Johnson had red ties next to it. The Ruger found in the field had the same specifications as those specified in the indictment. This evidence was more than sufficient to convict Johnson of possessing the firearm specified in the indictment on January 9.

F.

Finally, Johnson argues cumulative error—"that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004). But we found no error under his jury instruction, variance, impeachment, due process or sufficiency arguments; and with respect to the misjoinder issue, we held that any possible error was harmless. Johnson's cumulative error argument fails.

III.

Johnson also challenges his sentence, arguing that it was both procedurally and substantively unreasonable. We apply an abuse-of-discretion standard to both challenges, reviewing factual findings for clear error and legal conclusions *de novo*. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019).

Procedural reasonableness refers to a district court's obligation to "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Substantive reasonableness refers to the length of the sentence—whether too long (if appealed by the defendant) or too short (if appealed by the government). *Id.* at 442. A complaint of substantive unreasonableness alleges "that the court

placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *Id.*

*Procedural reasonableness.* Johnson argues that the district court erred by applying a two-point enhancement for possessing a dangerous weapon in relation to the conspiracy. *See* U.S.S.G. § 2D1.1(b). He claims that the evidence was insufficient to prove by a preponderance that he had a gun on the night of January 25. But two ATF agents testified that Johnson had pointed a gun at them that night before he took off into the field. And after Johnson was arrested and placed into a transport van, he was recorded identifying the firearm and telling his co-conspirators, "I damn near shot one of them." This evidence alone is sufficient to support the enhancement.

Johnson responds that the ATF agents were generally "confused" that night, noting that they had, for a time, mistakenly thought that a nearby restaurant employee had been involved in the attempted robbery. But it is not our place to second-guess the district court's credibility determinations. *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007). And in any event, no ATF confusion can explain away Johnson's own statements.

Johnson also attempts to distance himself from the gun recovered in the field, claiming that our decision in *United States v. Grubbs*, 506 F.3d 434 (6th Cir. 2007), rules out a constructive possession theory. *Grubbs* is inapposite.[2] But even if it were not, there is no need to rely on constructive possession. The testimony of two eyewitnesses and Johnson's own statements were

---

[2] In *Grubbs*, a witness testified to having seen Grubbs with a "dark-colored," "automatic" gun. 506 F.3d at 441. Several weeks later, police found a firearm hidden in his brother's bed when they executed a search warrant at Grubbs' mother's house, where he had been temporarily staying. *Id.* at 436, 439. We held this evidence, without more, insufficient to prove that Grubbs constructively possessed the gun beyond a reasonable doubt. *Id.* at 443. *Grubbs* does not help Johnson. First, the standard of proof required here is lower. Furthermore, agents saw Johnson point a gun at them shortly before he ran into a field; that same night, they recovered a gun in that same field. And Johnson has not suggested that there was anyone with him who might have possessed the gun.

enough to find by a preponderance of the evidence that Johnson possessed a firearm in relation to the conspiracy. Johnson's sentence is procedurally reasonable.

*Substantive reasonableness*. The district court sentenced Johnson to 371 months, a sentence 63 months above the upper end of the Guidelines range. Johnson argues that this sentence is substantively unreasonable.

To begin, Johnson alleges that the court gave short shrift to the § 3553(a)(6) factor, which addresses the need to avoid unwarranted sentencing disparities, and gave "no mention to other[]" factors. But Johnson neither explains any perceived disparity nor tells us which other factors warranted mention. Furthermore, not every factor will be important in every sentencing; "often one or two prevail, while others pale. . . . [A] district court may place great weight on one factor if such weight is warranted under the facts of the case." *United States v. Fleischer*, 971 F.3d 559, 573–74 (6th Cir. 2020) (quotations omitted).

Johnson argues that the district court put too much emphasis on the circumstances of the offense and his criminal history even though these factors were already accounted for in the Guidelines. But the court did not act unreasonably in giving particular weight to the serious character of the offenses. *See* 18 U.S.C. § 3553(a)(2)(A). The court emphasized the egregiousness of Johnson's conduct, especially that Johnson shot at Stevenson as his back was turned and as Stevenson "ran for his life." In taking into account Johnson's criminal history, the court noted that "he doesn't have much criminal history" but put particular emphasis on how Johnson's past crimes affected his victims and noted a need to "protect[] the public." *See id.* § 3553(a)(2)(C). The court discussed Johnson's apparent lack of respect for the law, *see id.* § 3553(a)(2)(A), particularly how he had pointed his gun at federal officers. The court also mentioned the need for deterrence. *See id.* § 3553(a)(2)(B). We cannot say that the district court abused its discretion.

We are mindful that the sentence varied upward from the Guidelines range. "But it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse-of-discretion review, the Court of Appeals should . . . give[] due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Gall v. United States*, 552 U.S. 38, 59–60 (2007).

Here, the district court fairly listened to arguments from each side, "gave a thorough and methodical rationale for its review," and provided a "thoughtful explanation for" the sentence it ultimately imposed. *Fleischer*, 971 F.3d at 572. The district court did not abuse its discretion, and Johnson's sentence is not substantively unreasonable.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court.