**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0067n.06
Filed: January 29, 2009

No. 07-2216

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ROBERT LLEWELLYN MALONE, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

**Before: MOORE and WHITE, Circuit Judges; and VINSON,** [*] **District Judge.**

**C. ROGER VINSON, District Judge.** Defendant-Appellant Robert Llewellyn Malone

appeals his conviction of the offense of possession of a firearm by a convicted felon, in violation of

Title 18, United States Code, Section 922(g)(1). For the following reasons, we **AFFIRM**.

**I. BACKGROUND**

Prior to the events giving rise to this appeal, the defendant was convicted of a felony offense

in Michigan state court. After he completed his jail sentence, Vischaun Rambus, a Michigan state

probation officer, began supervising him in late September 2005. Rambus conducted the initial home

visit on October 21, 2005, and he verified at the time that the defendant was living at 5609 Edwards

Avenue in Flint, Michigan, where he resided with his mother, her husband, another of her sons, and

---

[*]The Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

her goddaughter. The defendant was at the house with some friends when Rambus made his initial visit. Rambus verified that the defendant's bedroom was located in the basement of the house, and it was the only bedroom on that level. This was the only home visit Rambus made.

The defendant was required to report to Rambus every Monday and fill out a form declaring where he was residing. He consistently reported that he was residing at 5609 Edwards Avenue, and he never reported any change of address. The defendant last reported to Rambus on December 12, 2005, and failed to report to him at any time thereafter. Because of the defendant's failure to report as required, Rambus obtained an arrest warrant on January 20, 2006. He then accompanied a group of officers to 5609 Edwards Avenue on February 23, 2006, in order to execute the arrest warrant.

The defendant was not there. The officers were allowed into the residence by the defendant's mother, and she permitted them to search his bedroom. While in the basement, one of the officers found a Norinco SKS assault rifle (made in China) and a .38 caliber round of ammunition between the mattress and box spring of the defendant's bed. The firearm was preserved for fingerprints, but no prints of value were recovered. The officers also found in the bedroom correspondence addressed to the defendant at 5609 Edwards Avenue, as well as his driver's license and a temporary operator's license (both with his address listed as 5609 Edwards Avenue), his social security card, and his birth certificate. His mother confirmed that "everything in that room" belonged to the defendant, including some clothes from when he was younger (*e.g.*, "a spider man outfit").

In February 2006, when the warrant was executed, the defendant was not living regularly at 5609 Edwards Avenue. His mother testified that she would see him there "occasionally." When he

2

was there, he stayed in the basement, although he sometimes "slept all over the house." During this same time, his friends would often "hang out" in the basement and backyard. On some occasions his friends would be in the basement, even though the defendant was not there. This caused friction between the defendant and his mother, and they argued because she told him that she "didn't want his friends hanging around so much." Although she would keep the doors locked, the defendant had a key and she explained that "the problem was that Robert was unlocking and letting them in." His stepfather testified that on two occasions he found the defendant's friends in the basement without the defendant being there.

The day after the gun was seized from his bedroom, the defendant called Rambus because, according to Rambus, "he knew the assault rifle had been found" and he was "concerned about the . . . contraband that was found in his home." The defendant asked "what was going to happen" to him, and Rambus advised that he should surrender to the police, which he did not do.

The defendant was eventually arrested after being indicted in federal court on a charge of being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g). The case proceeded to trial. When the government rested its case, the defendant moved for judgment of acquittal, which was denied. After the defendant presented evidence and then rested his case, he renewed his motion for judgment of acquittal, which was also denied. The jury found him guilty and he was ultimately sentenced to 104 months incarceration. He now appeals, arguing that the evidence was insufficient to support the conviction.

## II. STANDARD OF REVIEW

This appeal, as just noted, raises a sufficiency-of-the-evidence challenge to the defendant's

conviction. The standard of review is straightforward:

> Because [the defendant] moved for judgment of acquittal twice
> during the trial --- at the close of the prosecution's case and at the
> close of all the evidence --- we review his motion for judgment of
> acquittal de novo. In a sufficiency-of-evidence challenge to a
> conviction, the question is whether, after viewing the evidence in the
> light most favorable to the prosecution, *any* rational trier of fact could
> have found the essential elements of the crime beyond a reasonable
> doubt. We will reverse a judgment for insufficiency of evidence only
> if, viewing the record as a whole, the judgment is not supported by
> substantial and competent evidence. But while this means we do not
> weigh the evidence or assess the credibility of the witnesses, this
> Court's power of review in these cases is not toothless. We have
> defined substantial evidence as being more than a scintilla. It means
> such relevant evidence as a reasonable mind might accept to support
> a conclusion. It is evidence affording a substantial basis of fact from
> which the fact in issue can be reasonably inferred.

*United States v. Grubbs,* 506 F.3d 434, 438-39 (6th Cir. 2007) (citations and quotation marks

omitted; emphasis in original). "[A] defendant claiming insufficiency of the evidence bears a heavy

burden." *United States v. Maliszewski,* 161 F.3d 992, 1005 (6th Cir. 1998). Further, circumstantial

evidence by itself may be sufficient to sustain a conviction and the evidence at trial need not exclude

every reasonable explanation except that of guilt. *United States v. Gonzalez,* 512 F.3d 285, 294 (6th

Cir. 2008).

### III. DISCUSSION

To establish the offense charged in this case, the government was required to prove that: (1)

the defendant had a prior felony conviction; (2) he knowingly possessed the firearm specified in the

indictment; and (3) the firearm traveled in and/or affected interstate or foreign commerce. *Grubbs,*

*supra,* 506 F.3d at 439. The parties stipulated at trial that elements (1) and (3) were present, so the only contested issue in the district court --- and now on appeal --- is whether there was sufficient evidence for the jury to find that the defendant knowingly possessed the firearm.

Under Title 18, United States Code, Section 922(g)(1), a conviction may be based on either actual or constructive possession of a firearm. Actual possession requires that the defendant have "immediate possession or control" of the firearm. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by, Scarborough v. United States,* 431 U.S. 563, 97 S. Ct. 1963, 52 L. Ed. 2d 582 (1977). Because the defendant was not in the house when the arrest warrant was executed (and, therefore, he could not have "immediate possession or control" of the firearm found under his bed), the government's case was based on a theory of constructive possession.

"Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Craven, supra,* 478 F.2d at 1333. "Proof that 'the person has dominion over the premises where the firearm is located' is sufficient to establish constructive possession" of that firearm. *United States v. Kincaide,* 145 F.3d 771, 782 (6th Cir. 1998) (citation omitted); *accord Grubbs, supra,* 506 F.3d at 439 ("In contrast to a situation where the defendant has physical contact with a firearm --- e.g., he holds it, holsters it, or keeps it in a place where it is immediately accessible --- constructive possession may be proven if the defendant merely had 'dominion over the premises where the firearm is located.'") (citation omitted). In this context, we have asked and answered the following question:

> [H]ow incriminating does the evidence have to be to support a finding of constructive possession? Though it would be unreasonable, and perhaps impossible, to expect a crystal clear path forward in such fact-intensive inquiries, our prior cases demonstrate at least one common thread: When the defendant is found in close proximity to a firearm at the time of the arrest, the inference of dominion and control is particularly strong, and thus the incriminating evidence needed to corroborate the conviction is less. *See, e.g., United States v. Black,* 525 F.2d 668, 669 (6th Cir.1975) (holding direct testimony tying a defendant to a gun was not required when the gun was found in the defendant's truck and when the defendant had both ammunition for the gun and a rack in which it could have been kept). Of course, this means the opposite should also be true --- the less evidence tying a defendant to a gun at the time of arrest, the greater the circumstantial evidence must be to support a conviction.

*Grubbs, supra,* 506 F.3d at 439-40. This court has repeatedly and frequently held that constructive possession may be shown to exist if the contraband is found in a defendant's bedroom or personal living space. For example, in *Grubbs,* we held that the government failed to establish constructive possession where the defendant was merely a "temporary guest" in the house where a gun was found. But, the court took pains to note that the result would have been different if the defendant "had some contact with the room where it was found" because "we have sustained a conviction for constructive possession when the weapon is found in areas over which the defendant exercised control, such as his bedroom." *See id.* at 440; *see also, e.g., United States v. Coffee,* 434 F.3d 887 (6th Cir. 2006) (conviction upheld where firearms were found in the closet in a bedroom "filled exclusively with defendant's belongings"); *United States v. Hadley,* 431 F.3d 484 (6th Cir. 2005) (conviction sustained where firearm was found in a drawer of an armoire located in bedroom that defendant shared with his wife; noting that "[a]t a minimum, then, the evidence would have permitted the inference that

Defendant had constructive possession, if perhaps only jointly with his wife, over a weapon kept in the couple's bedroom") (collecting multiple cases); *id.* at 516 (collecting additional cases and noting that "this court has held that discoveries of a firearm in a master bedroom closet of the defendant's residence, and in a dresser by the defendant's bed, sufficed to support a felon-in-possession conviction on a constructive-possession theory") (Sutton, J., concurring); *United States v. Dunlap,* 209 F.3d 472 (6th Cir. 2000) (conviction upheld when guns were seized at apartment for which the defendant co-signed the lease and in which he frequently conducted narcotics trade, despite argument that he lacked ready access to the apartment because his co-conspirator solely resided there); *United States v. Jones,* 21 F.3d 429 (6th Cir. 1994) (unpublished table decision) (evidence established joint constructive possession of firearm where, *inter alia*, (1) the defendant notified his parole officer that he lived at the house in question; (2) the guns were found in a closet that contained men's shoes and clothing; and (3) various other items, including parole documents and his identification, were found in "close proximity" to the guns); *United States v. Clemis,* 11 F.3d 597 (6th Cir. 1993) (dominion and control established where guns were found in the master bedroom in a nightstand along with a man's personal items); *accord United States v. Boykin,* 986 F.2d 270 (8th Cir. 1993) (conviction sustained where the defendant --- who was arrested elsewhere --- was charged as felon-in-possession after a gun was found between the mattress and box spring in master bedroom that he shared with his wife, which contained men's clothing, some correspondence addressed to him, and "other evidence [that] indicated Boykin occupied the master bedroom").

The defendant does not appear to take issue with this well established case law. In arguing that the evidence against him was insufficient, however, he makes several claims. He points out that no fingerprints were found on the firearm; there were no reports of him ever possessing the firearm; and, relatedly, there was no testimony from anyone claiming to have seen him with the gun. He also argues that since there was no evidence that he continued to reside at 5609 Edwards Avenue after his report to Ramos on December 12, 2005, his dominion and control of the bedroom is doubtful. His mother testified at trial that he was not staying at the house regularly and that she would only see him there "occasionally." The defendant thus claims that whatever control he may have had over the bedroom in the past, the government "failed to establish that he exercised *exclusive possession* and control of the room at the time the firearm was discovered." Specifically, his mother and stepfather testified that his friends occupied the basement at times when the defendant was not present.

The defendant's arguments are not persuasive, whether viewed individually or collectively. First, as was noted in *Coffee, supra,* 434 F.3d at 887, "[t]he fact that no identifiable fingerprints were found on [a gun] is not determinative" as it has been explained that "fingerprints are rarely identified on firearms." *Id.* at 897. Nor is it especially significant that no one had reported seeing the defendant with the firearm on previous occasions. The firearm at issue is, after all, a large assault rife, and not one with which the defendant would likely walk around in public view of other people. His strongest argument is that he was not consistently residing at 5609 Edwards Avenue in February 2006, so he no longer had the necessary dominion and control over the bedroom.

The defendant is mistaken when he suggests that the government was required to prove "that he exercised *exclusive possession* and control of the room." Constructive possession may be either sole or joint, as several of our cases cited above illustrate. Other circuits are in accord. For example, the defendant in *United States v. Kitchen,* 57 F.3d 516 (7th Cir. 1995) was convicted of possession of firearms by a felon. The firearms were discovered next to the bed and in a dresser drawer in a bedroom in his girlfriend's house. In that same bedroom, agents found men's and women's clothing, shoes and toiletries, various papers and invoices bearing the defendant's name, and a bracelet bearing his gang's insignia. The Seventh Circuit noted that: "Whether Kitchen actually lived with Williams is the subject of some dispute." *Id.* at 520. Indeed, Kitchen claimed to be living elsewhere when the guns were seized, and --- just like the defendant in our case --- it was alleged that he only stayed at the house where the guns were found "occasionally." *See id.* In rejecting this argument, the Court of Appeals stated:

> Under the doctrine of constructive possession, the jury could have determined that Kitchen possessed the weapons. The evidence adduced at trial suggested that Kitchen was something more than a casual visitor at Williams's home. In many of the recorded drug conversations with Kitchen, agents had reached him by calling the telephone number at that address. According to the government, Kitchen had stated that he lived at that address. Agents in fact saw Kitchen at that address on numerous occasions. The search revealed, in addition to the firearms, a number of Kitchen's possessions-his El Rukn bracelet, bills and papers bearing his name and various articles of men's clothing. . . . Kitchen argues that he in fact lived with his mother in Robbins, Illinois, and only visited Williams occasionally. But the jury was under no obligation to accept his testimony on this point. It could have instead concluded that Kitchen shared the residence with Williams.

*Id.* at 520-21. The court went on to note that it was immaterial that the defendant was incarcerated

at the time the agents actually seized the guns because the jury "might nevertheless have determined

that he constructively possessed the guns *before* he was incarcerated, despite the fact that the guns

were seized later." *See id.* at 521 (emphasis in original). Notably, the court rejected the argument that

Kitchen could not be found to have possessed the guns because other individuals had access to the

area where they were discovered:

> Neither is it material that other adults had access to the residence and
> may have had the same power to exercise control over the firearms
> that Kitchen had. Constructive possession may be either sole or joint.
> The fact that Williams, too, had access to the firearms fails to negate
> the inference that Kitchen did as well. The law recognizes the
> possibility of joint possession.
>
> The evidence is therefore sufficient to support Kitchen's conviction
> for a felon's possession of a firearm under Section 922(g)(1). The
> jury might well have determined that he lived at the residence and
> occupied the bedroom where the guns were located.

*Id.* at 521 (citations omitted).

The defendant here further argues that "[m]ere control or dominion over the place where

contraband is found is not enough by itself to establish constructive possession when there is joint

occupancy in a place." By this, he appears to be claiming that his friends "hanging out" at his house

a few times without him constitutes joint occupancy, which negates constructive possession. The

defendant relies on three non-Sixth Circuit cases for this argument, each of which can be easily

distinguished. First, in *United States v. Mills,* 29 F.3d 545 (10th Cir. 1994), the guns at issue were

found hidden and secretly stored in a dining room table compartment owned by the defendant's

roommate, and, further, this roommate testified that she put them there "without Mills' knowledge and contrary to his instructions." *Id.* at 550. The Tenth Circuit noted that with respect to constructive possession and joint occupancy, circuit precedent required that there be "'some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband.'" *Id.* at 549-50 (citation omitted). Because such evidence was plainly lacking in *Mills*, the conviction was reversed. Similarly, in the next case relied upon by the defendant, *United States v. Mergerson,* 4 F.3d 337 (5th Cir. 1993), the defendant shared a bedroom with his girlfriend and a gun was found between their mattress and box springs. In rejecting the government's argument that his living in the bedroom was by itself enough to establish constructive possession, the Fifth Circuit held that more was required. Specifically, as was the case in *Mills*, the court held that there needed to be "at least a plausible inference that the defendant had knowledge of and access to the weapon and contraband." *Id.* at 349. The conviction was reversed in that case because there was no "indicia that established that Mergerson even knew of the weapon." *Id.* And finally, in *United States v. Reese,* 775 F.2d 1066 (9th Cir. 1985), the Ninth Circuit held that if a residence is jointly occupied, "the mere fact that contraband is discovered at the residence will not, *without more*, provide evidence sufficient to support a conviction based on constructive possession." *See id.* at 1073 (emphasis added). Thus, all three cases stand for the proposition that something "more" is required to establish constructive possession where there is joint possession. As discussed further below, the evidence here establishes the "more" that is required.

The defendant also cites to *United States v. Lawrence,* 471 F.3d 135 (D.C. Cir. 2006), which is similar in some respects, but quite different in totality. The guns there were found in a bedroom that Lawrence allegedly shared with his girlfriend. Law enforcement also found men's clothing in the bedroom, including a distinctive "zoot suit" jacket; an I.D. card bearing Lawrence's name; more than 90 pieces of mail also bearing his name; and photos of Lawrence, including one of him wearing the "zoot suit" jacket. His girlfriend (who was charged as a co-defendant) testified that Lawrence had a key to her apartment and that he stayed there several nights a week. She also said that he kept his clothing and possessions at the apartment and that he received mail there. The court opined: "If we considered the testimony of Lawrence's co-defendant, we would conclude that sufficient evidence supported his convictions." *Id.* at 139. However, circuit precedent precluded the court from relying on that testimony, so the Court of Appeals was left with only the evidence that was admitted during the government's case-in-chief, which it found to be "thin." For example, most of the mail found in the bedroom did not list the apartment as Lawrence's address (they were sent to Lawrence when he was previously incarcerated, so the address was redacted for the jury). Also, most of the mail did not bear a postmark, and those that did were postmarked five to six years earlier. The "zoot suit" jacket --- and the photo of Lawrence wearing that jacket --- were "many years old." And the identification card did not bear his picture and gave no clue as to when it was issued, when it became effective, or when it expired. All this, coupled with the fact that no witnesses (other than his girlfriend) placed Lawrence at the apartment, was enough to warrant reversal.

In this case, in contrast to the facts in the above four cases, the gun was indisputably found in the defendant's own bedroom (along with his clothes and his personal effects). The defendant also demonstrated that he had knowledge of the gun. He called his probation officer the day after it was seized because he was "concerned" about what was going to happen to him. Notably, he did not deny at the time that the firearm was his, he did not offer any explanation as to why it was found under his bed, nor did he accuse his friends of leaving it there without permission. If not a tacit admission that the gun was his, it certainly provides sufficient basis for inferring that he had knowledge of the firearm in his room.

Moreover, the testimony of the defendant's mother established that his connection to the room was not insignificant. She testified, for example, that the bedroom in the basement was his; that he had his own key to the house; that he was not just a casual visitor; and that everything in the room belonged to him. This testimony, coupled with the physical items the agents recovered at the scene (including the correspondence addressed to the defendant, his driver's license, social security card, and birth certificate) and his post-seizure statement, clearly exceeds the "thin" evidence in *Lawrence* and distinguishes this case from the other cases upon which the defendant relies.

This case is more similar to our factual scenario in *Craven, supra,* 478 F.2d at 1329. The firearms there were found, *inter alia*, in the master bedroom of a house, along with monogrammed men's shirts bearing the initials JPC. The defendant, James P. Craven, was not present at the time of the search, but his wife, his children, and two other adults were in the house. When he later surrendered to police, they asked him about the guns. Craven did not deny that he owned the guns,

nor did he deny having knowledge about them. Rather, he stated in response to questioning that he was a gun collector and he had generally had guns for some time. At trial, Craven put forth evidence that two other individuals (besides his wife) resided in the house, and that he no longer lived at that address because he had moved in with another woman at a separate address. Also, he put forth evidence that the night before the raid the other individuals in the house gave a party and a guest left one of the firearms behind. After the jury found him guilty, he appealed, arguing, in relevant part, insufficiency of the evidence. We concluded that, when viewed most favorably for the government, the evidence "amply establishes that Craven had constructive possession of the firearms." *See id.* at 1333. We noted that "[a]lthough possession of the residence is insufficient to establish possession of all the contents of the house, the government's evidence went much further." *Id.* Specifically, the evidence showed: (1) one gun was found in the master bedroom along with the defendant's clothes; (2) there was testimony indicating that he slept in the room and, therefore, he had constructive joint possession of it; and (3) he had given statements post-arrest which "allowed the jury reasonably to infer that these weapons belonged to him." *See id.* at 133-34. Inasmuch as these three factors are also present here, the result must be the same. The evidence in this case was sufficient to support the jury's finding of constructive possession of the firearm.

## IV. CONCLUSION

For these reasons, the defendant's conviction is **AFFIRMED**.

14

**MOORE, Circuit Judge, concurring in the judgment.** I write separately to note the very restrictive standard of review that binds us in this case. As the majority notes, "[i]n a sufficiency-of-evidence challenge to a conviction, the question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Grubbs*, 506 F.3d 434, 438 (6th Cir. 2007) (internal quotation marks omitted). This standard of review prevents us from weighing evidence and assessing witness credibility. *Id.* at 438-39. Malone presented testimony that he was not the only individual with access to the basement bedroom and that he had not been staying there routinely. Both of these facts could indicate that someone else placed the gun under the bed without Malone's knowledge. However, given the conflicting evidence that Malone held the bedroom out as his residence, that Malone's belongings were found near the gun, that no one else's belongings were found in the room, and that Malone called his probation officer the day after the search, expressed concern to his probation officer that contraband had been found in his home, and asked his probation officer what would happen to him as a result, I cannot conclude that it was irrational for the trier of fact to conclude that Malone constructively possessed the weapon in question. Accordingly, I concur in the judgment affirming Malone's conviction.