NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0284n.06

No. 20-1574

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 10, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MICHAEL MONTRAIL BROWN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BOGGS, MOORE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Michael Brown pleaded guilty to distributing fentanyl and acetyl fentanyl. He was sentenced to 108 months' imprisonment. He now challenges the procedural and substantive reasonableness of his sentence. We AFFIRM.

I.

In August 2019, an undercover police detective learned of a phone number that one could call to purchase illegal drugs. The first time the detective called the number, Michael Brown answered. Brown met the detective and sold him "a mixture or substance containing fentanyl . . . and acetyl fentanyl." Several more times that month, the detective successfully used the number to arrange drug purchases. Sometimes, Brown took the calls and delivered the drugs personally; at other times, some of Brown's roommates did.

Brown shared an apartment with his brother, Deangelo Brown, and with Demetrius Hamilton, and Gerald Greene. Brown had listed the apartment with the Michigan Secretary of

State as his residence, and his car was registered to the same address. After obtaining a warrant, police searched the apartment and recovered fentanyl, acetyl fentanyl, cocaine, and heroin. They also retrieved a loaded 9mm handgun from under a mattress. In the same room as the handgun, they found the title to Brown's car, mail addressed to Brown, more fentanyl, and more cocaine. In another room, officers found Greene's car registration, along with additional fentanyl and cocaine. Greene's car had been used to deliver drugs to the undercover officer during one of the controlled buys.

A federal grand jury indicted Brown on three counts related to the distribution of fentanyl. In exchange for dismissal of the other charges, Brown pleaded guilty to one count of distributing fentanyl and acetyl fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). He was released on bond pending sentencing.

But Brown was apparently undeterred. In March 2020, less than a week after he entered his guilty plea, police observed Brown conducting suspected drug sales in a parking lot. When officers confronted him, Brown admitted that he had heroin in his car. Officers searched the car and recovered heroin and cocaine.

Because he had violated his bond conditions, Brown was later arrested pursuant to a federal warrant. At the time of his arrest, Brown had two grams of heroin concealed in his underwear. Brown offered to tell the officers about a larger stash of drugs if they would overlook the heroin on his person. Brown then told the officers that, in his apartment, they would find a rubber ball that had been modified to conceal drugs. He said that the ball belonged to Greene and that it contained heroin. Brown was living with Greene at a new location at the time; Brown consented to a search of their apartment. On the dining room table, officers found a black rubber ball with

7.55 ounces (214.04 grams) of heroin hidden inside. Law enforcement took Brown into custody pending sentencing.

The presentence report held Brown responsible for a converted drug weight of 474.31 kilograms. That figure included 214.04 kilograms of converted drug weight attributed to the heroin found in the rubber ball. *See* U.S.S.G. § 2D1.1 cmt. n.8(D) (treating one gram of heroin as one kilogram of converted drug weight for purposes of calculating a defendant's base offense level). Because his offenses involved between 400 and 700 kilograms of converted drug weight, Brown's base offense level was 26. *Id.* § 2D1.1(c)(7). He received a two-level enhancement for the possession of a firearm because of the handgun that police recovered during the August 2019 search. *Id.* § 2D1.1(b)(1). With an offense level of 28 and a criminal history category of III, Brown's advisory Guidelines range was 97 to 121 months' imprisonment. At sentencing, Brown objected to the inclusion of the heroin that was hidden in the ball and to the firearm enhancement. The district court overruled these objections and denied Brown's request for a downward variance. The court then imposed a within-Guidelines sentence of 108 months' imprisonment and 3 years' supervised release. Brown timely appeals.

## II.

Brown first contends that his sentence was procedurally unreasonable. When reviewing the procedural reasonableness of a sentence, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020). We will not disturb the district court's findings of fact unless we are left with a "definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013)).

Among the demands of procedural reasonableness are that the district court properly calculate the Guidelines range and consider the relevant sentencing factors listed in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Sherrill*, 972 F.3d 752, 768 (6th Cir. 2020); *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Brown argues that the district court failed on both fronts. We disagree and find that his sentence was procedurally reasonable.

A.

First, Brown asserts that the district court erred when it held him responsible for the heroin recovered from inside the rubber ball, which allegedly belonged to Greene. A defendant who has been convicted of a drug offense is held responsible at sentencing "for all drug quantities that are included within the scope of his 'relevant conduct,' as that term is defined" in the Sentencing Guidelines. *United States v. Gill*, 348 F.3d 147, 149 (6th Cir. 2003); *see also United States v. Davern*, 970 F.2d 1490, 1494 (6th Cir. 1992) (en banc) ("The law . . . is clear that a base offense level is determined by the amount of drugs included in the defendant's relevant conduct, not just amounts in the offense of conviction or charged in the indictment."). When the offense involves "jointly undertaken criminal activity[,] . . . whether or not charged as a conspiracy," relevant conduct includes "all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

Here, the ball purportedly belonging to Greene contained 7.55 ounces (214.04 grams) of heroin, which is enough to support an inference that he intended to distribute it. *See United States v. Jackson*, 55 F.3d 1219, 1221, 1226 (6th Cir. 1995) (inferring an intent to distribute based on 50 to 80 grams of heroin). Therefore, the heroin is included in relevant conduct if it was "part of the

same course of conduct or common scheme or plan" as Brown's present fentanyl conviction. U.S.S.G. § 1B1.3(a)(2); *cf. Gill*, 348 F.3d at 153 (explaining that "simple possession of illegal drugs for personal use" does not "trigger[] the application of" U.S.S.G. § 1B1.3(a)(2) "because that section applies only if the two offenses can be grouped under [U.S.S.G. § 3D1.2(d)]").

Brown's sole argument regarding drug quantity is that the district court "failed to recognize" that he withdrew from his conspiracy with Greene[1] "when he advised the police about the heroin [that was] located in the ball." Appellant Br. at 8–9. Therefore, Brown says, the heroin was not involved in relevant conduct. Brown did not raise this withdrawal argument in the district court, so we review it for plain error. *See United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). But this argument would fail under any standard of review. Even if Brown's statements to law enforcement qualified as a valid withdrawal, a defendant may still be held responsible for relevant conduct that occurs *before* his withdrawal from a conspiracy. *See United States v. Smith*, 749 F.3d 465, 485 (6th Cir. 2014) (upholding sentencing enhancement based on calculation of loss prior to defendant's withdrawal from conspiracy); *see also Smith v. United States*, 568 U.S. 106, 111 (2013) ("Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy."); *United States v. Mehmood*, 742 F. App'x 928, 942 (6th Cir. 2018) (rejecting ex post facto challenge to sentencing enhancement where defendant did not withdraw from conspiracy until after Guidelines amendment went into effect). Brown advances no argument to suggest that the ball of heroin was not attributable to relevant drug conduct that occurred before his purported withdrawal. Therefore, we cannot say that the district court's drug quantity determination was clearly erroneous.

---

[1] In making his withdrawal argument, Brown appears to concede that he and Greene were engaged in an uncharged conspiracy related to the heroin found in the rubber ball. He offers no argument that this conspiracy was not part of the relevant conduct for his August 2019 offense.

B.

Brown also challenges the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of the handgun found under a mattress in his apartment. For the enhancement to apply, the government must prove by a preponderance of the evidence that Brown had actual or constructive possession of the weapon during relevant conduct. *United States v. Pryor*, 842 F.3d 441, 452–53 (6th Cir. 2016); *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003). If the government makes that showing, we presume that the weapon was related to the offense. *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012). To rebut that presumption, Brown would have to "show that it was 'clearly improbable' that the weapon was connected to the offense." *Id.* (quoting *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007)). The district court's determination that Brown possessed the firearm in connection with the offense is a factual finding that we review for clear error. *United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019).

A defendant constructively possesses a firearm if he knowingly "has 'ownership, or dominion or control over the [firearm] itself, or dominion over the premises where the [firearm] is located.'" *United States v. Galvan*, 453 F.3d 738, 742 (6th Cir. 2006) (alterations in original) (quoting *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002)); *see United States v. Raymore*, 965 F.3d 475, 483 (6th Cir. 2020). Circumstantial evidence alone can establish constructive possession. *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013).

Here, the gun was found in Brown's apartment under a mattress in a room that contained the title to Brown's car and mail addressed to him. We have "repeatedly and frequently held that constructive possession may be shown to exist if the contraband is found in a defendant's bedroom or personal living space." *United States v. Malone*, 308 F. App'x 949, 952–53 (6th Cir. 2009) (collecting cases); *see, e.g.*, *United States v. Peterson*, 840 F. App'x 844, 851–52 (6th Cir. 2021);

*United States v. Dunlap*, 209 F.3d 472, 479 (6th Cir. 2000), *abrogated in part on other grounds as recognized in United States v. Camacho-Arellano*, 614 F.3d 244, 250 (6th Cir. 2010). In addition to illustrating Brown's dominion over the apartment and over the room where the weapon was located, the record reveals a clear motive for Brown to have this gun. *See United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008) (recognizing that "proof of motive" may help support a finding of constructive possession (citation omitted)). Law enforcement discovered significant quantities of fentanyl, heroin, and cocaine throughout the apartment. The district court found that the handgun was part of a "classic . . . fortress situation." A fortress scenario occurs when "'it reasonably appears' that a firearm located on a 'premises controlled or owned by a defendant . . .' is 'used to protect the drugs'" located there. *United States v. Massey*, 758 F. App'x 455, 464 (6th Cir. 2018) (quoting *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009)). In light of Brown's drug trafficking activity, the significant quantity of controlled substances found throughout the apartment, and the evidence indicating that the gun was stored in Brown's own living space, the district court did not clearly err when it found that Brown had constructive possession of the handgun. *See United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008); *United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998).

Brown suggests that our analysis should change because the mattress "was not [located in] a bedroom per se" but instead in "a living room with a couch and mattress" that others could access. Appellant Br. at 10. Even if correct, that detail is immaterial on this record. Though others may also have had access to or dominion over the room, more than one individual can have constructive possession of a firearm. *See, e.g.*, *Wheaton*, 517 F.3d at 367; *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005); *United States v. Hill*, 79 F.3d 1477, 1486 (6th Cir. 1996).

Nor did the district court clearly err in finding that Brown's constructive possession took place during relevant conduct. Police located the handgun at Brown's registered address shortly after Brown's repeated sales to the undercover detective. The record reveals that Brown continued to traffic illegal drugs in the following months.

Brown fails to rebut the resulting presumption that the firearm was connected to his offense. Brown is required to present evidence—not mere argument or speculation—demonstrating that such a connection is "clearly improbable." *Greeno*, 679 F.3d at 514. In assessing the firearm's connection to the offense, we consider a variety of factors, including "the proximity of the firearm to the drugs, the type of firearm involved, whether the firearm was loaded, and any alternative purpose offered to explain the presence of the firearm." *United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002). The handgun was loaded, and officers found it in a room with controlled substances. Fentanyl, heroin, and cocaine were recovered throughout the apartment, and the district court found that the gun was there to "protect drug amounts in the residence." Brown offers no alternative explanation for the gun's presence. Consequently, we find that the district court properly applied the firearm enhancement.

C.

Next, Brown argues that the district court failed to consider all the § 3553(a) factors. Brown classifies this alleged error as a question of substantive, rather than procedural, reasonableness. He is mistaken. Substantive reasonableness and procedural reasonableness require "separate inquir[ies]." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). Only the latter addresses whether the district court gave "adequate consideration to [the § 3553(a)] factors." *Id.* (alteration in original) (quoting *Holguin-Hernandez v. United States*, 140

S. Ct. 762, 766 (2020)); *see Gall*, 552 U.S. at 51; *Sherrill*, 972 F.3d at 768, 771; *Rayyan*, 885 F.3d at 442.

The only specific factor that he claims the district court omitted was "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Because Brown did not raise this issue below, we review for plain error. *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). We find none here. When a district court considers the relevant sentencing factors, it does not need to address each one explicitly. *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007). At sentencing, the district court acknowledged the disparity factor but did not discuss it in detail. That is unsurprising given that Brown made no argument about the need to avoid unwarranted disparities below. And even on appeal, he still offers no explanation of how his within-Guidelines sentence creates an unwarranted disparity. The district court engaged in a detailed and clear discussion of the pertinent § 3553(a) factors. Nothing more was required. *See United States v. Simmons*, 501 F.3d 620, 625–26 (6th Cir. 2007). We find no procedural error.

III.

Finally, Brown asserts that his sentence is substantively unreasonable. We disagree. "In contrast to procedural reasonableness, substantive reasonableness focuses on the length of the sentence." *United States v. Clayton*, 937 F.3d 630, 643 (6th Cir. 2019). A sentence within a properly calculated Guidelines range, like Brown's, is presumed to be substantively reasonable. *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

In selecting a sentence, the district court considered Brown's criminal history and the seriousness of the drug offense at issue. The court acknowledged that Brown "had a very difficult childhood in his early years" and that Brown expressed a desire to reform his conduct going

forward. Yet, based on the record, the court also found a need to emphasize specific deterrence, general deterrence, and public safety. Brown's continued drug trafficking while he was released on bond also "aggravate[d] the situation." On balance, the district court found that a sentence near the middle of the Guidelines range was appropriate.

In response, Brown offers only the argument we rejected above: the district court's alleged failure to consider all the § 3553(a) factors. Brown offers no other rationale to support his assertion that the district court unreasonably weighed the sentencing factors. And we see no basis for second-guessing the district court's reasoned explanation for the sentence it imposed. *See Fleischer*, 971 F.3d at 572–73. Brown's sentence was not substantively unreasonable.

\* \* \*

For the foregoing reasons, we AFFIRM.