NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0426n.06

Case Nos. 24-3549/3550

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 17, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| JUAN A. OTERO, III, | ) | |
| Defendant - Appellant. | ) ) | OPINION |

Before: BATCHELDER, GIBBONS, and BLOOMEKATZ, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. On two separate occasions, police officers waited for Juan Otero to leave a residence, pulled him over nearby during a traffic stop, and brought him back to the residence. Once back, officers executed a search warrant of the residence and interviewed Otero. Otero then made incriminating statements—some of which were not *Mirandized*: during the first search, Otero said that a gun in the master bedroom belonged to him; during the second search, he said that the drugs stashed in the backyard were given to him to sell.

A grand jury indicted Otero with one count of felon-in-possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and three counts of possessing with the intent to distribute a controlled substance, *see* 21 U.S.C. § 841(a)(1), (b)(1). Before trial, Otero moved to suppress the statements made during the second search, arguing that the interview did not occur and that the police report recording the interview was unreliable. He did not seek to suppress the statements made during the first search. The district court denied the motion, finding that Otero's motion raised a

credibility issue, not a suppression issue, that should be decided by the jury at trial. The jury then found Otero guilty of all the charges.

Otero appeals his convictions, arguing that (1) the district court erred in admitting evidence of his statements during the first search because the officer did not inform him of his *Miranda* rights; (2) the district court erred in denying his motion to suppress evidence of his statements during the second search because the officer failed to readvise him of his *Miranda* rights; and (3) the evidence at trial was insufficient to support his firearm and drug convictions. Because Otero failed to initially raise his first two claims with the district court, they are subject to plain error review. We decline to review these claims for plain error because they turn on several unresolved factual issues. As for Otero's third claim, we hold that the evidence was sufficient to support the jury's verdicts.

I.

In July 2021, Detective Justin Morris of the Akron Police Department began to surveil a residence on Kent Court in Akron, Ohio. Morris saw Otero come and go from the residence several times. The house belonged to Otero's fiancée, where she lived with her two children.

One morning, officers waited for Otero to leave the residence and then pulled him over nearby during a traffic stop. The traffic stop was valid—Otero had outstanding arrest warrants and a suspended driver's license. But officers did not create a record showing that they read Otero his *Miranda* rights before bringing him back to the Kent Court residence to interview.

Once back, officers began to search the residence. During the search, Morris interviewed Otero on the enclosed front porch of the house. The purpose of the interview, according to Morris, was to "gather any knowledge of what contraband or controlled substances" were in the house and to determine "Otero's involvement with any contraband that would be found in the house." DE 76,

Trial Tr., Page ID 574. During the interview, Otero told Morris that there was a 9-millimeter pistol in the top drawer of a nightstand in the master bedroom and that he had found the gun about two years ago. Officers then found a 9-millimeter Ruger and ammunition in the nightstand drawer as well as two digital scales, plastic baggies, and a prescription pill bottle with Otero's name on the label nearby. Shortly after the Kent Court search, a grand jury indicted Otero for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Otero was eventually released on bond.

While Otero was out on bond for the felon-in-possession charge, officers executed another search warrant at a house on Marcy Street, which belonged to Otero's mother. Once again, officers waited for Otero to leave the house, pulled him over during a traffic stop, and brought him back to the residence. During the search, Detective Michael Dietrick interviewed Otero in the kitchen. Dietrick read Otero his *Miranda* rights. Another officer then asked Otero, "what do you think brought us over here?" Gov't Trial Ex. No. 40, 2:01–2:03. Otero responded that he thought the search related to text messages he received from a woman looking for fentanyl; he insisted, however, that he told the woman that he is now sober. Other than marijuana, Otero denied having drugs in the home. The interview then concluded.

After the interview, Dietrick left the residence to put his recording device in his car, believing that officers had found only marijuana and a digital scale. But when Dietrick returned, he learned that other officers had discovered cocaine, fentanyl, and methamphetamine in the backyard. After the officers brought the drugs in from the backyard, Otero asked to speak with Dietrick. The two went to the basement where Otero told Dietrick that the drugs found in the backyard belonged to him.

In a post-search report, Dietrick noted the evidence recovered during the Marcy Street search but did not report his basement interview with Otero. It was not until August 2022, five months after the Marcy Street search, when Dietrick reported the basement interview. A week later, a grand jury indicted Otero with three counts of possession with intent to distribute a controlled substance.

Otero moved to suppress evidence of his basement interview during the Marcy Street search, arguing that the interview did not occur. The district court denied the motion.

Both cases proceeded to a single trial. During trial, Morris testified that he interviewed Otero during the Kent Court search. Otero objected to the testimony, but the district court overruled the objection. Morris then testified that during the front porch interview, Otero told him that there was a loaded 9-millimeter pistol in the top drawer of a nightstand in the master bedroom. As Morris recalled, Otero said that he found the pistol and two magazines in a Crown Royal bag next to his house about two years prior and kept the firearm for protection. Dietrick testified that pills, cocaine, and meth were found in the yard during the Macy Street search, and recordings of Dietrick's interview with Otero were played for the jury. During his direct examination, Dietrick stated that Otero told him that the drugs recovered in the Macy Street search were owned by Otero and that he could not go to jail.

The jury found Otero guilty on all charges. The district court sentenced Otero to 120 months of imprisonment on the felon-in-possession charge and 300 months of imprisonment on the drug charges. Otero timely appealed.

Otero asserts two main arguments on appeal. First, he argues that the district court erred in admitting evidence of his interviews with the officers because the statements were obtained in

violation of *Miranda*. Second, Otero argues that without these statements, the evidence was insufficient to support his firearm and drug convictions.

## II.

Otero challenges the district court's admission of evidence of two interviews: the front porch interview at the Kent Court residence and the basement interview at the Marcy Street residence. We consider each interview in turn.

## A.

Otero first argues that the district court erred in admitting evidence of his statements to Detective Morris on the front porch of the Kent Court residence because Otero did not receive his constitutionally required *Miranda* warnings. Because Otero did not move before trial to suppress evidence of these statements, he has forfeited appellate review of this claim. *See United States v. Ramamoorthy*, 949 F.3d 955, 962 (6th Cir. 2020).

Otero argues that he did not forfeit the claim because counsel objected to the admission of this evidence at trial. He asks this court to treat the claim as an evidentiary challenge, which is reviewed under an abuse of discretion standard. Otero, however, did not specify the grounds for his objection. The district court therefore had no occasion to address the *Miranda* issue at trial. Thus, Otero's general, unspecified objection did not preserve the issue for appeal. *See A.K. ex rel. Kocher v. Durham Sch. Servs., L.P.*, 969 F.3d 625, 631 (6th Cir. 2020) ("[V]ague references to an issue fail to clearly present it to the district court so as to preserve the issue for appeal." (alteration in original) (citation omitted)).

But even if Otero's objection specified the *Miranda* issue, it came too late. To preserve this claim, Otero was required to move to suppress the statements *before* trial. *See* Fed. R. Crim. P. 12(b)(3)(C) (stating that a motion to suppress evidence must be made before trial "if the basis

for the motion is then reasonably available and the motion can be determined without a trial on the merits"); *see also Ramamoorthy*, 949 F.3d at 962. Because he did not, Otero forfeited the claim.

If we review forfeited claims, we review for plain error. *Greer v. United States*, 593 U.S. 503, 507 (2021). Plain error review is "permissive, not mandatory." *United States v. Olano*, 507 U.S. 725, 735 (1993); *see* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights *may* be considered even though it was not brought to the court's attention.") (emphasis added). We have declined to review such claims when they "turn[] on unresolved questions of fact." *United States v. Clark*, 24 F.4th 565, 578 (6th Cir. 2022) (alteration in original) (quoting *Ramamoorthy*, 949 F.3d at 962); *e.g.*, *United States v. Simer*, 835 F. App'x 60, 68 (6th Cir. 2020) (declining to review defendant's forfeited *Miranda* claim for plain error).

The government relies heavily on this court's decision in *Ramamoorthy*, which declined to review a forfeited suppression claim for plain error. In that case, we noted that suppression claims are often fact-intensive and thus unfit for appellate review in the first instance. *See Ramamoorthy*, 949 F.3d at 963–64. We concluded that Ramamoorthy's suppression claim fell into that category because it turned on several unresolved facts about the alleged *Miranda* violation:

> Ramamoorthy alleges that the airport police made him go with them from the jetway to the airport terminal, intimidated him into responding to their questions, and at one point even commanded him to write out a statement. The government responds that the officers were polite and non-confrontational and that they never restricted Ramamoorthy's freedom of movement. Far from being intimidated into speaking, the government asserts, at several points Ramamoorthy volunteered statements about his conduct without being asked.

*Id.* at 964. Given these dueling narratives about the circumstances of Ramamoorthy's statement, this court determined that plain error review was not appropriate. *Id.*

Here, the parties largely agree on the facts surrounding the front porch interview: officers watched Otero leave his fiancée's house, pulled his car over, brought him back to the house, and

then questioned him on the front porch. They also agree that Morris specifically asked Otero whether there were any drugs or contraband in the house. So deciding Otero's claim would not require this court to pick between two dueling narratives or to resolve contested factual issues.

But there are other reasons to decline plain error review. One such reason is when the record on which this court would base its determination would be incomplete or misleading. *See id.* at 963. To determine whether Otero was in *Miranda* custody when he was questioned on the front porch, this court would consider, among other factors, "the length . . . of the questioning" and whether Otero was told that he "did not need to answer the questions." *United States v. Zabel*, 35 F.4th 493, 502 (6th Cir. 2022) (citation omitted). But on the record before us, we do not know how long Morris questioned Otero or whether Morris told Otero that he did not need to answer the questions. Thus, resolving Otero's claim on "the facts before us could easily paint a misleading picture." *Ramamoorthy*, 949 F.3d at 963.

Otero concedes that "the precise length of the interview is unknown" and that "there is no evidence whatsoever that [he] was told he did or did not have to answer the questions posed to him." Even so, he argues that the record is developed on several issues, like the location of the interview and the manner of Otero's questioning. At trial, Morris testified that his "purpose in interviewing" Otero was to "gather any knowledge of what contraband or controlled substances would be contained in the house and to ascertain Mr. Otero's involvement with any contraband that would be found in the house." DE 76, Trial Tr., Page ID 559. But Morris "did not attempt to narrate in detail his entire interaction" with Otero as he had no reason to believe that he was being asked whether Otero was in custody. *See Ramamoorthy*, 949 F.3d at 964. His testimony was intended to develop evidence probative of Otero's guilt or innocence, which is not necessarily (or even often) relevant to resolving a suppression motion. *See Davis v. United States*, 564 U.S. 229,

236–37 (2011) (stating that the exclusionary "rule's sole purpose . . . is to deter future Fourth Amendment violations"); *Stone v. Powell*, 428 U.S. 465, 489–90 (1976) ("[A]pplying the exclusionary rule . . . at trial . . . divert[s] from the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding."). It would be difficult, if not impossible, for this court "to reconstruct the totality of circumstances relevant to the suppression question working solely from the evidence introduced at trial." *Ramamoorthy*, 949 F.3d at 963. We therefore decline to review this suppression claim for plain error.

B.

Otero also argues that evidence of his statement to Detective Dietrick in the basement of the Marcy Street residence should have been suppressed. Although Dietrick gave Otero *Miranda* warnings before he interviewed him in the kitchen, Otero argues that Dietrick should have readvised him of his *Miranda* rights before he interviewed him in the basement.

Otero moved to suppress evidence of his basement interview before trial. His motion, however, did not seek to suppress evidence of his statement on *Miranda* grounds. Rather, he claimed the evidence should be suppressed because the interview did not, in fact, occur and Dietrick's report memorializing the alleged confession was unreliable. Otero did cite *Arizona v. Fulminante* for the proposition that "[t]he admission of an involuntary confession is a 'trial error,' similar in both degree and kind to the erroneous admission of other types of evidence." DE 13, Mot. to Suppress, Page ID 31 (quoting 499 U.S. 279, 310 (1991) (Rehnquist, C.J., concurring)). But nowhere in his motion did he argue that his alleged confession in the basement was involuntary or that he should have been given additional *Miranda* warnings. And in denying Otero's motion to suppress, the district court noted that Otero did not argue that the police violated his right to remain silent or denied him a lawyer, or that his *Miranda* waiver was not made knowingly,

voluntarily, or intelligently. The issue Otero did raise in his motion to suppress—whether Otero told Dietrick that he committed the drug offenses—was not a suppression issue, but a credibility dispute that "can and will be decided by a jury." DE 15, District Ct. Op., Page ID 44. Because Otero did not move to suppress the basement confession on *Miranda* grounds, the claim is forfeited and subject to plain error review.[1]

This claim, like Otero's first suppression claim, turns on several unresolved factual issues. *See Ramamoorthy*, 949 F.3d at 964. In determining whether additional *Miranda* warnings were required, this court asks whether "the circumstances seriously changed between the initial warnings and the interrogation." *Treesh v. Bagley*, 612 F.3d 424, 432 (6th Cir. 2010) (citing *Wyrick v. Fields*, 459 U.S. 42, 47 (1982) (per curiam)). In doing so, we consider the "totality of the circumstances," weighing several factors, no one of which is determinative. *United States v. Weekley*, 130 F.3d 747, 750–51 (6th Cir. 1997). Relevant factors include the amount of time elapsed between the reading of *Miranda* rights and the questioning, whether the suspect was readvised of his *Miranda* rights, and whether anything occurred that affected the suspect's understanding of the warnings given him and his right to request counsel or to remain silent. *Id.* at 751; *Treesh*, 612 F.3d at 432.

The record does not contain enough information from which this court can resolve this fact-dependent issue. We do not know how much time elapsed between Dietrick's reading of the *Miranda* rights and the basement interview, or whether anything occurred between Dietrick and

---

[1] Otero also objected at trial when the government offered evidence of Otero's basement interview. On appeal, Otero argues that his motion to suppress, which cited *Arizona v. Fulminante*, and his objection at trial were enough to preserve the issue on appeal. But as discussed, Otero's motion to suppress did not argue that the basement interview statements should be suppressed under *Miranda*; it questioned whether the basement interview occurred in the first place. Nor did Otero seek to exclude evidence of the interview at trial on *Miranda* grounds.

Otero that affected Otero's ability to exercise his rights. Without these critical facts in the record, we cannot properly review this claim for plain error.

III.

Otero next argues that the district court erred in denying his motion for acquittal because the government failed to produce enough evidence to convict him on the firearm and drug charges.[2] To overturn a jury verdict on this ground, Otero faces a "heavy burden." *United States v. Latimer*, 16 F.4th 222, 225 (6th Cir. 2021) (citation omitted). He must show that "no 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Hinojosa*, 67 F.4th 334, 340 (6th Cir. 2023) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In determining whether Otero met this high bar, this court views the evidence and draws all reasonable inferences in the government's favor. *United States v. Siemaszko*, 612 F.3d 450, 462 (6th Cir. 2010).

A.

To convict Otero of being a felon in possession of a firearm, the government must prove beyond a reasonable doubt that (1) Otero was a felon; (2) he possessed a firearm; and (3) the firearm traveled in or affected interstate or foreign commerce. *See* 18 U.S.C. § 922(g); *United States v. Walker*, 734 F.3d 451, 455 (6th Cir. 2013).

Otero argues that the government failed to meet its burden on the second element because the evidence was insufficient to establish that he possessed the 9-millimeter pistol. Otero's possession could have been actual or constructive. *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). While a defendant actually possesses a firearm when he has "immediate

---

[2] Otero moved for judgment of acquittal at the close of the government's case and at the close of all evidence. *See* Fed. R. Crim. P. 29.

possession or control" of it, he constructively possesses a firearm when he "does not have possession but instead knowingly has the power and intention at a given time to exercise control over [it], either directly or through others." *Id.* (citation omitted). Proof that the defendant has dominion over the premises where the firearm is found is sufficient to support a jury finding of constructive possession. *United States v. Crumpton*, 824 F.3d 593, 609 (6th Cir. 2016); *see United States v. Workman*, 755 F. App'x 533, 537 (6th Cir. 2018).

Officers found the 9-millimeter pistol in the master bedroom of the Kent Court residence. The issue, then, is whether Otero had dominion over this part of the residence and thus constructively possessed the firearm.

Morris testified at trial that he saw Otero come and go from the Kent Court residence several times. Officers also found a prescription pill bottle with Otero's name on it on a shelf in the bedroom (next to the nightstand where the firearm and ammunition were discovered). A jury could reasonably infer based on these facts that Otero had control over this part of the residence.

To be sure, when more than one person lives at a residence, the government must point to an additional statement or circumstance to connect the defendant to the contraband found on the premises. *See Latimer*, 16 F.4th at 225–26. The evidence needed to make this showing, however, is "minimal." *United States v. Walker*, 734 F.3d 451, 456 (6th Cir. 2013). The government made that minimal showing by offering evidence of Otero's front porch interview. During the interview, Otero told Detective Morris that he had a 9-millimeter pistol and ammunition in the top drawer of the nightstand in the master bedroom. Otero also stated that he found the pistol and ammunition in a Crown Royal bag next to the house and kept it for protection. Finally, Otero told Morris that he had lived at the Kent Court residence with his fiancée and her two children during the last two years, and that his fiancée knew nothing about the firearm and ammunition. Otero's control over

the Kent Court residence, combined with his statements affirming that the firearm belonged to him, is enough to support a jury finding of at least constructive possession.

B.

To convict Otero of possession with the intent to distribute drugs, the government must prove beyond a reasonable doubt that Otero "(1) knowingly, (2) possessed a controlled substance, (3) with intent to distribute it." *United States v. Sadler*, 24 F.4th 515, 550 (6th Cir. 2022) (citation omitted). Otero argues that the government failed to satisfy the second and third elements—that he possessed the drugs and that he did so with the intent to distribute them.

*Possession.* Officers found several drugs in the backyard of the Marcy Street residence, including about 48 grams of cocaine, 622 fentanyl pills, and 55 grams of meth. To prove that Otero was in constructive possession of the drugs, the government must show that Otero had dominion or control over them, which may be shown by evidence that the drugs were found in his residence or personal living space. *See United States v. Bailey*, 553 F.3d 940, 944 (6th Cir. 2009); *United States v. Malone*, 308 F. App'x 949, 952–53 (6th Cir. 2009) (collecting cases).

Officers testified that they saw Otero leaving the Marcy Street residence and found mail at the residence addressed to Otero from an unemployment agency, a child support agency, and the Federal Public Defender. A jury could therefore reasonably conclude that Otero resided at the Marcy Street residence, perhaps in addition to living at the Kent Court residence.

Although Otero's mother also lived at the Marcy Street residence, the government offered other evidence connecting Otero to the drugs found at the residence. *See Latimer*, 16 F.4th at 225–26. Dietrick testified that after officers found the drugs, Otero told him that the drugs had been "fronted" to him to sell. Circumstantial evidence supported this admission, too. Directly underneath Otero's mail, officers found a digital scale, cash, and a bag of marijuana. The

government also admitted text messages between Otero and two potential customers. In the first series, a woman asks Otero for "slows," but he refuses to sell them to her, explaining that he is now sober. But in the second series, Otero tells a man that does not have any "slow[s]" but offers to sell him "Per[c]s 30s," the same pills found to contain fentanyl from the Marcy Street residence. DE 76, Trial Tr., Page ID 673–74. All told, the evidence was sufficient to allow a jury to reasonably conclude that Otero lived at the Marcy Street residence and that he constructively possessed the cocaine, methamphetamine, and fentanyl. *See Latimer*, 16 F.4th at 226 (holding evidence of cash, a digital scale, baggies of cocaine, and incriminating texts was enough to connect defendant with the drugs in shared residence).

Otero emphasizes that the drugs were found along the property line between the Marcy Street residence and the home next door, which suggests that officers may have retrieved them from the neighbor's yard. The precise location of the drugs is beside the point because, as Dietrick testified, Otero admitted that the drugs belonged to him. The jury also considered evidence that the drugs were found in several places along the property line. And the location of the drugs did not create a reasonable doubt in the minds of the jurors—the jury determined that the drugs belonged to Otero. That decision is entitled to considerable deference. *See United States v. Hunt*, 521 F.3d 636, 647 (6th Cir. 2008).

*Intent to distribute.* The record also shows that Otero possessed the drugs with the intent to distribute. Officers testified that the amount of cocaine, fentanyl pills, and meth found in the backyard were distribution quantities, which permits an inference that the drugs were intended for distribution, not personal use. *See United States v. Castro*, 960 F.3d 857, 866 (6th Cir. 2020). That inference is confirmed by Otero's admission to Dietrick that the drugs were "fronted" to him to sell. The text messages further show that Otero had planned to sell fentanyl pills just three days

earlier. A jury could reasonably conclude from the evidence that Otero intended to distribute the drugs found at the Marcy Street residence.

Viewing the evidence and drawing all reasonable inferences in the government's favor, the district court did not err in denying Otero's motions for acquittal on the firearm and drug charges. *See Siemaszko*, 612 F.3d at 462.

## IV.

For the foregoing reasons, we affirm Otero's convictions.